337 So.2d 1021 (1976)
David Wayne GREENFIELD, Appellant,
v.
STATE of Florida, Appellee.
No. 75-1731.
District Court of Appeal of Florida, Second District.
September 24, 1976.
Rehearing Denied October 25, 1976.
Jack O. Johnson, Public Defender, Robert H. Grizzard, II, Asst. Public Defender, and Paul J. Martin, Legal Intern, Bartow, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
McNULTY, Chief Judge.
On this direct appeal appellant Greenfield assails his conviction of sexual battery. The sole issue on appeal relates to the denial of a motion for new trial predicated on the ground that the prosecutor prejudicially commented in summation on appellant's exercise *1022 of his right to remain silent at the giving of his Miranda rights at the time of his arrest. We affirm.
Most significantly, in this case, appellant pleaded not guilty by reason of insanity. Accordingly, there was no real dispute as to the essential objective facts herein. They are that the prosecutrix, having sunned herself on a local beach in Sarasota in the late morning or early afternoon on the day of the offense, was returning to her car because of the threat of rain. It was necessary that she pass through a wooded area bordering the beach. While in this wooded area she was accosted by appellant and dragged to a more secluded area of the beach where the sexual assault occurred. Upon her release by appellant the prosecutrix drove immediately to the police station and reported the incident, describing appellant. A police officer promptly returned to the scene of the assault and in the vicinity thereof spotted appellant as one fitting in considerable detail the description given by the prosecutrix. He arrested appellant and read him his Miranda rights.
The officer testified that he explained these rights, that appellant thanked him for explaining them, and that appellant said he understood them and did not wish to speak to the officer until he spoke to an attorney. Shortly thereafter at the police station appellant was again interviewed by other officers, again reminded of his rights and again he reiterated that he did not wish to speak to the officers, that he wanted to speak to an attorney. In fact, he was permitted to and did call an attorney. No objection was made to the introduction of this evidence relating to the giving of the Miranda rights and to appellant's responses thereto.
During closing arguments, however, the prosecutor made the following comments:
"But let's go on from what she stated. Let's go on to Officer Pilafant who took the stand, who the psychiatrists, both defense psychiatrists, never even heard about, never even talked to. He states that he saw this fellow on the beach and that he went up to him, talked to him and then arrested him for the offense. The fellow voluntarily put his arms behind his back and said he would go to the car. This is supposedly an insane person under the throes of an acute condition of schizophrenic paranoia at the time. He goes to the car and the officer reads him his Miranda rights. Does he say he doesn't understand them? Does he say `What's going on? No. He says `I understand my rights. I do not want to speak to you. I want to speak to an attorney.' Again an occasion of a person who knows what's going on around his surroundings, and knows the consequences of his act. Even down  as going down [in] the car as you recollect Officer Pilafant said he explained what Miranda rights meant and the guy said  and Mr. Greenfield said `I appreciate that, thanks a lot for telling me that.' And here we are to believe that this person didn't know what he was doing at the time of the act, and then even down at the station, according to Detective Jolley  he's down there. He says, `Have you been read your Miranda rights?' `Yes, I have.' `Do you want to talk?' `No.' `Do you want to talk to an attorney?' `Yes.' And after he talked to the attorney again he will not speak. Again another physical overt indication by the defendant."
At this point, counsel for defendant strenuously objected on the basis that such comments were improper references to appellant's insistence on his Fifth Amendment right to silence. We cannot agree.
While we do agree that, at least in the face of an objection, testimony or prosecutorial comment relating to a defendant's insistence on his right to remain silent generally constitutes reversible error,[1] we are of the view that under the circumstances of this case the general rule ought not apply.
When insanity is raised by plea as a defense, and evidence thereof is forthcoming *1023 prima facie sufficient to raise a reasonable doubt, the state no longer can travel on the presumption of sanity; it must establish sanity beyond a reasonable doubt as with every element of the offense charged.[2] Certainly, evidence of the conduct and apparent state of mind and awareness of an accused, particularly where, as here, it is connected closely in point of time to the crime charged, is relevant to this issue; and it would be manifestly unfair to permit a defendant prima facie to establish a defense and then preclude the state from meeting it by barring relevant evidence to the contrary because of the "Miranda" rationale.[3]
Here, for example, the evidence relied upon by the state was perhaps the most competent evidence on appellant's mental capacity at the time of the offense available, being so closely connected to the res gestae. It was neither unfair to introduce it[4] nor improper to comment upon it in summation; and, though considered in a somewhat different context (i.e., with respect to a defendant's right to silence during a psychiatric evaluation ordered by the court), we concur with the observations of Mr. Justice Adkins in Parkin v. State:[5]
"When the plea of not guilty by reason of insanity was entered, it was done so with knowledge of the existing statutes and case law on the subject. There is no constitutional right to plead this defense, and if the statutes and case law permit a defendant the privilege of raising it, he must waive certain constitutional rights with respect to it, including the privilege against self-incrimination... ."
In view whereof, the judgment and sentence appealed from should be, and they are hereby, affirmed.
HOBSON, J., concurs.
GRIMES, J., dissents with opinion.
GRIMES, Judge (dissenting).
There is considerable logic in Judge McNulty's opinion. Yet, it is an appreciable step beyond Harris v. New York in which the U.S. Supreme Court held that when a defendant took the stand he could be cross-examined on inconsistent statements he had given to the police in violation of his Miranda rights. That decision was based upon the premise that a person should not be entitled to commit perjury and at the same time hide behind the constitutional right to remain silent.
Here, there is no question of perjury because the appellant did not take the stand, and I cannot equate interposing a defense of insanity with the giving of perjured testimony. The testimony of Officer Pilafant, had it been objected to, and the comments of the prosecutor in closing argument, which were objected to, would require reversal under Bennett v. State, supra. The fact that this evidence was probative on the sanity issue cannot deprive appellant of his constitutional protections.
Moreover, had the state been conscious of the possibility that Pilafant's testimony might result in a violation of Miranda principles, the problem could have been avoided with a minimum of prejudice to the state's case. The questions and answers could have been couched in such a manner as to permit the officer to convey to the jury the fact that the appellant carried on a perfectly rational conversation without specifically stating that he chose to avail himself of his right to remain silent.
In view of the present posture of the law on this subject, I must respectfully dissent.
NOTES
[1] Shannon v. State (Fla. 1976), 335 So.2d 5 (Opinion filed June 30, 1976); Bennett v. State (Fla. 1975), 316 So.2d 41; Clark v. State (Fla. App.2d, 1976) 336 So.2d 468 (Opinion filed July 28, 1976).
[2] See, e.g., Farrell v. State (Fla. 1958), 101 So.2d 130; Byrd v. State (Fla.App.2d, 1965), 178 So.2d 886.
[3] Cf. Harris v. New York (1971), 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1.
[4] No issue is made herein about the postural sequence in which the evidence came in. That is, the evidence came in during the state's case in chief before there was any evidence from the appellant as to his insanity. But no objection was made at the time. So, by objecting to prosecutorial comments thereon during summation, the appellant is in no different position than he would have been in had such evidence been introduced in rebuttal, when it would have been, as we hold here, proper.
[5] (Fla. 1970), 238 So.2d 817.