442 So.2d 944 (1983)
STATE of Florida, Petitioner,
v.
Arthur Hayes BURWICK, Respondent.
No. 61630.
Supreme Court of Florida.
December 8, 1983.
Certiorari Denied April 2, 1984.
*945 Jim Smith, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for petitioner.
Melanie Ann Hines, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for respondent.
Certiorari Denied April 2, 1984. See 104 S.Ct. 1719.
ADKINS, Justice.
This petition is before the Court for review of the decision of the First District Court of Appeal in Burwick v. State, 408 So.2d 722 (Fla. 1st DCA 1982), which directly conflicts with the decision of the Second District Court of Appeal in Greenfield v. State, 337 So.2d 1021 (Fla. 2d DCA 1976). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The issue is whether the state may introduce evidence of a defendant's post-arrest conduct, including silence and the request to see an attorney after receiving Miranda (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), warnings, as it relates solely to the issue of mental condition near the time of the offense when the defendant has asserted the insanity defense and the evidence is presented by the state in rebuttal. The First District Court of Appeal in Burwick held this type of evidence inadmissible, expressly disagreeing with the holding in Greenfield. We agree with the district court's decision and disapprove the decision in Greenfield.
The material facts are not in dispute and are as follows. On the morning of May 29, 1980, the victim called the sheriff's office to report that a man had broken into her home and had sexually assaulted her. Officer Logan of the Jacksonville Sheriff's Department answered the call. The victim told Officer Logan that her attacker was Burwick, whom she had known socially for several months, and that she knew where he lived. The victim and Officer Logan drove to Burwick's apartment, where they found him standing on the sidewalk talking to a man. The victim identified Burwick as the man who attacked her, and Officer Logan arrested him.
Before the case went to trial Burwick's counsel filed a notice of intent to rely on the defense of insanity. In its case-in-chief the state introduced evidence of defendant's behavior during the commission of the crime and of his conduct at the time of his arrest. This consisted of the victim's testimony that she was awakened at about 5:30 a.m. by a man attempting to choke her and to cover her face with a chemical-soaked rag. She struggled and the man threatened, "If you don't be still and quiet, I'll kill you." Although she could not see her attacker's face, she recognized his voice as that of Burwick.
Her assailant continued to choke her and she passed out. She stated that when she *946 came to she was naked, her hands were tied, and Burwick sexually assaulted her. When she began to cry, Burwick "quit everything, just stopped, put his clothes back on and started apologizing." Burwick told her that "he was sorry that I had to know it was him doing this, he didn't want me to know it was him." Burwick continued to apologize and told her that he would wait if she wanted to call the police or, if she didn't want to call the police, he would turn himself in to the psychiatric ward of the hospital for treatment. She told him that she just wanted him to leave, and he did so. After Burwick left, the victim dressed and called a neighbor, James Harris. When Mr. Harris arrived at her home, the victim told him about the attack. Mr. Harris stayed with her until she had given her children breakfast, and then he left to take her oldest child to school. After Mr. Harris left, the victim called the police. It was approximately 8:30 a.m.; the police answered the call about fifteen minutes later.
The state also called three members of the sheriff's department to testify about the circumstances of Burwick's arrest and his subsequent conduct. Officer Logan testified that at about 9:00 a.m., three hours after the attack, he placed Burwick under arrest as a result of the victim's identification and read him his rights. The state attorney asked Officer Logan to describe Burwick's apparent emotional state at the time of the arrest and the officer responded that "he appeared to be calm, relaxed. He apparently realized what was going on." Sergeant Brown, Officer Logan's supervisor, was asked to describe Burwick's conduct when he interviewed him shortly after the arrest. Sergeant Brown stated that, when he arrived at the scene of the arrest, he read Burwick his rights and that Burwick stated he understood these rights. Burwick and Sergeant Brown conversed for a while and, according to Sergeant Brown's testimony, Burwick did not seem emotionally upset, was clean and well-dressed and gave coherent responses to questions. Richard Pruitt, a homicide detective who also interviewed Burwick, testified that Burwick stated that he understood his rights, signed the rights form, appeared to understand the questions, and answered coherently and without hesitation.
The defense called Robert Russell, an inmate in the county jail who had shared a cell with Burwick, and Burwick himself. Mr. Russell testified that he had observed Burwick and thought that he "acts very oddly. He does crazy, disoriented things." Burwick testified in his own behalf. He stated that he had suffered from a lot of emotional distress prior to the time of the assault and that he had been drinking a great deal. He claimed to have had a history of black-outs and to have been in a psychiatric hospital for a time. In response to questions on direct examination, Burwick stated that he remembered waking about 5:00 a.m. on May 29, feeling depressed, and being angry because his car wouldn't start. Burwick testified that he remembered getting his car started and that "the next thing I fully remember is being in the house and in the room with [the victim] and by the state, the condition she was in, I could see that something had happened. I didn't know what." He never denied committing the assault, but stated that he was not aware of his actions, and that his mind did not clear until about eight o'clock the morning of the assault.
After the defense rested its case, the state, with the jury absent, advised the court that on rebuttal it "intended to elicit testimony from police officers regarding the defendant's exercise of his constitutional rights in response to his assertion of insanity defense." Under the authority of Greenfield, the trial judge allowed Officer Logan and Sergeant Brown to testify fully concerning Burwick's conduct at the time of the arrest. Officer Logan stated that, after he read Burwick his rights, he asked Burwick if he would like to make a statement; Burwick replied that he did not. Sergeant Brown testified that his conversation with Burwick, which took place very soon after the arrest, ended with Burwick stating that he wanted to talk with a lawyer. *947 The state, also in rebuttal of the insanity defense, offered the testimony of Dr. Miller, a psychiatrist, who stated that, in his expert opinion, Burwick could distinguish between right and wrong and understood the nature of the offense at the time the offense was committed.
On appeal, the First District Court of Appeal reversed the convictions and remanded for a new trial upon finding that the trial judge committed reversible error in allowing the state to rebut the insanity defense by introducing testimony describing Burwick's refusal to make a statement and request for an attorney. The district court expressly rejected the Second District Court's Greenfield decision.
We fully recognize that it is a fundamental principle of our constitutional law that a defendant cannot be penalized for exercising his fifth amendment privilege to refuse to communicate to the authorities information which would implicate him in the commission of a criminal offense. Miranda; Clark v. State, 363 So.2d 331 (Fla. 1978); Bennett v. State, 316 So.2d 41 (Fla. 1975). The reason for the rule holding inadmissible at trial evidence of the post-arrest silence and request for counsel of a defendant who has been advised of his Miranda rights is that the evidence creates an inference that the defendant is guilty of committing the criminal act. There is no dispute that it is reversible error for the prosecution to attempt to impeach a defendant's alibi testimony by asking on cross-examination why he remained silent at the time of his arrest. Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).
The Greenfield decision permits the state to rebut the defense of insanity with evidence, taken during custodial interrogation, of a defendant's desire to remain silent and his request for an attorney. That decision is based largely on the unfounded assumption that post-arrest, post-Miranda silence is probative of sanity. Inasmuch as this position cannot be reconciled with the principles of law announced in United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), and Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), we disagree.
In Hale, the United States Supreme Court weighed the probative value of post-arrest, post-Miranda silence and in so doing observed:
At the time of arrest and during custodial interrogation, innocent and guilty alike  perhaps particularly the innocent  may find the situation so intimidating that they may choose to stand mute. A variety of reasons may influence that decision. In these often emotional and confusing circumstances, a suspect may not have heard or fully understood the question, or may have felt there was no need to reply. See Traynor, The Devils of Due Process in Criminal Detection, Detention, and Trial, 33 U.Chi.L.Rev. 657, 676 (1966). He may have maintained silence out of fear or unwillingness to incriminate another. Or the arrestee may simply react with silence in response to the hostile and perhaps unfamiliar atmosphere surrounding his detention. In sum, the inherent pressures of in-custody interrogation exceed those of questioning before a grand jury and compound the difficulty of identifying the reason for silence.
422 U.S. at 177, 95 S.Ct. at 2137 (footnote omitted). The Court also recognized that an arrestee, who had just been informed of his Miranda rights and was particularly aware of his right to remain silent, could reasonably infer that his silence would not be used against him. With this in mind the Court continued as follows:
[F]ailure to offer an explanation during the custodial interrogation can as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory testimony was a later fabrication. There is simply nothing to indicate which interpretation is more probably correct.
Id. at 177, 95 S.Ct. at 2137. In sum, the Supreme Court found post-arrest, post-Miranda *948 silence inherently ambiguous and thus incapable of serving a legitimate probative purpose.
Regardless of the nature of the defense raised, the evidentiary doctrine in Hale remains intact. Post-arrest, post-Miranda silence is deemed to have dubious probative value by reason of the many and ambiguous explanations for such silence. 422 U.S. at 180, 95 S.Ct. at 2138. Contrary to what Greenfield intimates, these ambiguities attendant to post-Miranda silence do not suddenly disappear when an arrestee's mental condition is brought into issue. The same evidentiary problems addressed by the Supreme Court in Hale are present in the case before us. For example, one could reasonably conclude that custodial interrogation might intimidate a mentally unstable person into silence. Likewise, an emotionally disturbed person could be reasonably thought to rely on the assurances given during a Miranda warning and thereafter choose to remain silent. In sum, just what induces post-arrest, post-Miranda silence remains as much a mystery today as it did at the time of the Hale decision. Silence in the face of accusation is an enigma and should not be determinative of one's mental condition just as it is not determinative of one's guilt. Accordingly, the state should not be permitted to confirm Burwick's mental state with evidence of his post-Miranda silence.
With equal dissatisfaction we reflect upon the constitutional infirmities which plague the Greenfield decision. Burwick was arrested, informed that he had a right to remain silent, that anything he said might be used against him, and that he had a right to an attorney if he so desired. See Miranda v. Arizona. Above all, he was implicitly assured that he would not be penalized if he should choose to exercise these Miranda rights. Doyle v. Ohio. The decision in Greenfield capriciously disavows those governmental assurances contained within the Miranda warning and permits the state to go back on its word. It is fundamentally unfair for the state to lure Burwick into remaining silent then impeach the man with this very same silence. To permit the state to benefit from the fruits of its own deceptions violates the due process clause of the fourteenth amendment and article I, section 9, of the Florida Constitution. See Doyle v. Ohio; see also United States v. Hale, 422 U.S. 171, 182, 95 S.Ct. 2133, 2139, 45 L.Ed.2d 99 (White, J., Concurring).
Our decision today is thoroughly consistent with our decision in Parkin v. State, 238 So.2d 817 (Fla. 1970). In that case we held that where a defendant in a criminal case serves notice that she will rely upon a defense of insanity, her rights to freedom from self-incrimination are not invaded when the court requires her to submit to psychiatric examination by court appointed psychiatrists. Id. at 822. We carefully limited the scope of that decision in order to safeguard the privilege against self-incrimination from just the sort of situation we face in the instant case. We stated:
In other words, the Court and the State should not in their inquiry go beyond eliciting the opinion of the expert as to sanity or insanity, and should not inquire as to information concerning the alleged offense provided by a defendant during his interview....
Id. at 820. In the instant case, the prosecution could have elicited testimony which would demonstrate the fact that the defendant carried on a rational and coherent conversation without specifically revealing that he chose to remain silent and assert his constitutional rights.
Accordingly, we approve the decision of the First District Court of Appeal and disapprove the decision of the Second District in Greenfield v. State.
It is so ordered.
BOYD, McDONALD and EHRLICH, JJ., concur.
OVERTON, J., dissents with an opinion, with which ALDERMAN, C.J., concurs.
OVERTON, Justice, dissenting.
I dissent. In my view, when a defendant has asserted the insanity defense the state *949 should be able to introduce evidence of a defendant's post-arrest conduct, including his silence after receiving Miranda warnings, so long as such evidence relates solely to the issue of the defendant's mental condition near the time of the offense and is presented by the state in rebuttal to mental condition evidence presented by the defendant. In this case, there was no issue concerning whether the appellant committed the act for which he was charged. The only real issue was whether the appellant was sane at the time of the offense.
I recognize that it is a fundamental principle of constitutional law that a defendant cannot be penalized for exercising his fifth amendment privilege to refuse to communicate to the authorities information which would implicate him in the commission of a criminal offense. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Clark v. State, 363 So.2d 331 (Fla. 1978); Bennett v. State, 316 So.2d 41 (Fla. 1975). Further, I agree that it is reversible error for the prosecution to attempt to impeach a defendant's alibi testimony by asking the defendant on cross examination why he remained silent at the time of his arrest. Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). There are exceptions, however, and one is that a prosecutor may use a defendant's post-arrest silence to impeach exculpatory testimony when there was no evidence that the defendant had received Miranda warnings. Fletcher v. Weir, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). It is reasoned that evidence of silence creates an inference that the defendant is guilty of committing the criminal act and the purpose of the rule is to avoid such an inference. In the instant case, however, there is no question that the act was committed by Burwick. The only issue was the defendant's mental condition at the time of the offense. Mental competency is a distinct separate issue to which the inference of guilt by silence just does not logically or reasonably apply.
The appellant, Burwick, claimed as his sole defense that he was insane at the time he assaulted the victim and he offered testimony tending to place his sanity in doubt. In Florida the defendant is presumed sane, but, once the defendant introduces evidence indicating insanity, the state must rebut the insanity defense by proving the defendant sane beyond a reasonable doubt. Holmes v. State, 374 So.2d 944, 948 (Fla. 1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1845, 64 L.Ed.2d 267 (1980); Parkin v. State, 238 So.2d 817 (Fla. 1970). The state presented evidence of Burwick's conduct at the time of his arrest, including his acknowledgment of his rights and his desire to remain silent, in rebuttal to the (1) testimony of an inmate in the county jail who shared a cell with Burwick and testified that Burwick "acts very oddly" and "does crazy, disoriented things," and (2) Burwick's testimony that his mind was not clear at the time of the offense. The state's rebuttal testimony was intended to show Burwick's mental condition at the time of his arrest which was between the time of the offense and the time when the cellmate made his observation. Burwick, by claiming insanity and putting on this testimony, opened the door for the state to present this relevant, probative evidence concerning Burwick's state of mind at the time of his arrest. I conclude that the reason for the rule, as enunciated in Doyle and Hale, is not present in the instant case. Evidence of how Burwick responded to the Miranda warnings is admissible, in my view, as long as such evidence goes solely to the issue of Burwick's competency at the time of the offense. This conclusion has support in federal jurisdictions. See Sulie v. Duckworth, 689 F.2d 128 (7th Cir.1982), cert. denied, ___ U.S. ___, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983); United States v. Trujillo, 578 F.2d 285 (10th Cir.), cert. denied, 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978). I find that the majority unduly restricts the state in its presentation of relevant, probative, rebuttal evidence to meet its burden of proving a defendant sane beyond a reasonable doubt.
For the reasons expressed, I would quash the decision of the district court in the instant case.
ALDERMAN, C.J., concurs.