471 So.2d 121 (1985)
Allahzar God ALLAH, Appellant,
v.
The STATE of Florida, Appellee.
No. 83-2825.
District Court of Appeal of Florida, Third District.
June 4, 1985.
Rehearing Denied July 8, 1985.
*122 Bennett H. Brummer, Public Defender and Susan J. Silverman, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Richard L. Polin, Asst. Atty. Gen., for appellee.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
PER CURIAM.
The defendant was convicted of first-degree murder. He was seen in broad daylight at an intersection of two main thoroughfares repeatedly stabbing another man whom he had never met before. The killing was without apparent motive. Although the defendant and the victim had never spoken to one another, the defendant, purportedly suffering from a delusion, believed the victim had insulted and threatened him and meant to kill him. Upon his arrest, the defendant told the police that God told him to kill the victim. He was otherwise quiet and unemotional. When advised of his right to an attorney, the defendant requested one. Predictably, the defense was insanity.
The defendant contends that the trial court erred in admitting over the defendant's timely objection rebuttal testimony that he requested an attorney after his arrest. Relying on State v. Burwick, 442 So.2d 944 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984), he correctly asserts that this testimony, inadmissible as an improper comment on the defendant's exercise of a Miranda-protected right, is not made admissible because offered to rebut the defendant's insanity defense. The defendant is incorrect, however, in his assertion that he preserved this point for appeal, as he must, see Clark v. State, 363 So.2d 331 (Fla. 1978),[1] by timely objection.
While it is true that the defendant objected at the time the State's rebuttal testimony was introduced, that objection was meaningless under the well-recognized rule that "[i]f evidence theretofore has been admitted without objection, a subsequent objection to admission of evidence of the same import is waived." Ingle v. Ingle, 42 N.C. App. 365, 368, 256 S.E.2d 532, 535 (1979). See Star Realty v. Strahl, 261 Iowa 362, 154 N.W.2d 143, 145 (1967) (failure to object to testimony waives right to object to further questions on the same subject matter); Breiner v. Olson, 195 Neb. 120, 126, 237 N.W.2d 118, 124 (1975) ("Error cannot be predicated on the admission of testimony when testimony of the same nature was previously admitted without objection."); State v. Rogers, 275 N.C. 411, 432, 168 S.E.2d 345, 358 (1969), cert. denied, 396 U.S. 1024, 90 S.Ct. 599, 24 L.Ed.2d 518 (1970) ("It is the well established rule ... that when incompetent evidence is admitted over objection, but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost."); Wright v. American General Life Insurance Co., 59 N.C. App. 591, 598, 297 S.E.2d 910, 915 (1982), rev. denied, 307 N.C. 583, 299 S.E.2d 653 (1983) (same). See also Rowles v. Woronwitch, 369 So.2d 362 (Fla. 4th DCA), cert. denied, 379 So.2d 208 (Fla. 1979); National Car Rental System, Inc. v. Holland, 269 So.2d 407 (Fla. 4th DCA 1972), cert. denied, 273 So.2d 768 (Fla. 1973). In the case before us, the evidence which was admitted without objection was not merely of the same import or the same nature but was identical.
The defendant called three psychiatrists to testify on his behalf. Each of them expressed his expert opinion that the defendant did not know the difference between right and wrong at the time of the crime. On cross-examination, the prosecutor asked each of three psychiatrists the following hypothetical question, which, *123 without objection by the defendant,[2] included as an operative fact that the defendant requested a lawyer upon being apprehended by the police:
"Assume the following facts were true: Number one, a witness sees the Defendant chasing a white male across the street. The witness is a passenger in a van driving down the same street. As the Defendant chases the white male across the street he is stabbing the white male in the back with a knife. The van pulls up next to the two men. The white man runs around the front of the van to the passenger door and tries to get into the van, still being pursued and stabbed by the Defendant. The witness opens the door and sticks out a gun which she's holding in her hand. The Defendant looks up and sees the gun. His face showing surprise as he sees it and he runs back across the street. The witness who is an off-duty police officer chases the Defendant and shouts, `Stop. Police.' As she finishes saying this, the Defendant stops and turns around to look at her.
"The witness, while pointing the gun at the Defendant, tells him to drop the knife which he does. As the witness is picking up the knife the Defendant walks to a nearby bench and sits down. The witness holds him there at gunpoint and tells him not to move or she will shoot him. The Defendant does not attempt to move from the bench. As she holds the Defendant at gunpoint the Defendant asks her, `Why are you holding that gun on me?'
"The witness says, `Because if you move I will kill you.' To this the Defendant responds, `I want my attorney.'

"My first question is this: Based on the facts that I just related to you, do you have an opinion as to whether the actions of the Defendant are more consistent or less consistent with the Defendant being in touch with reality at the time of these acts?" (emphasis supplied).
Dr. Corwin, the first psychiatrist, responded this way:
"I think it would be consistent with either position. Here's a man who is being observed by people, yet continues to stab at a man.
"A woman points a gun at him and he walks away from her. It may be a rational, sensible man would not have walked away. On the other hand, the fact that he said, `I want an attorney,' might indicate some awareness of his being in trouble. It could be either way.
"My feeling would be that in totality his actions would indicate lack of awareness completely of the reality he was in."
The prosecutor then attempted to impeach Dr. Corwin by confronting him with an answer he had given in a pretrial deposition to a question which also probed the significance of the defendant's post-arrest request for an attorney:
"Q What significance, if any, do you attach to the fact that he asked for an attorney?
"A Well, I think that was an awareness  of course that makes one wonder that he must have known he was going to be charged with a crime and he wanted an attorney to protect him.
"Q Those facts ... would you find [them] more consistent with being in touch with reality or more consistent with reacting to some sort of delusion?
"A More consistent with his being in touch with reality. He was aware that there was a gun being pointed at him. He dropped the knife on command and he asked for a lawyer."
Again, defense counsel did not object.
The second psychiatrist, Dr. Castiello, saw little significance in the defendant's request for a lawyer. To emphasize this *124 point, the defendant's attorney, on redirect examination of the doctor, pursued this line of questioning:
"Q Now, in the hypothet that was read to you by the prosecution, taking that out of context, could that be consistent as well as inconsistent with mental illness?
"A It could be looked at any way you want to because as you very well pointed out, any kind of fact or isolated event taken out of context can be looked at in whatever way you want.
"Q So if he, in fact, after asking the witness why was she pointing the gun at him, I want my lawyer, does that mean he recognized the legal difficulties or could it mean something else?
"A I think it could mean anything. By that I mean just because somebody who, of course, is not wearing a uniform is pointing a gun and threatening to shoot you, your response is, "I want a lawyer', that's kind of  not too relevant to the situation. You may decide you need a lawyer at one point in time when somebody is pointing a gun at you. I think that to just call for an attorney doesn't necessarily to me at least mean that the person was exercising good judgment at all."
The prosecution then conducted a brief recross-examination focused on the defendant's request for an attorney:
"Q Doctor, is it your testimony that if an off-duty police officer chased the Defendant, showed him a badge and a gun and yelled, `Police', after he had just stabbed the man to death, when he made the statement, `I want an attorney' that wasn't relevant to the situation?
"A No, I don't believe I said that. I said that in my opinion it was kind of inappropriate at the time.
"Q It was inappropriate?
"A Yes, sir."
As before, the defendant did not object.
Dr. Jaslow, the third psychiatrist called by the defendant, was also cross-examined by the prosecutor on the psychological import of the defendant's post-arrest request for an attorney:
"A On the basis of just what you gave me in the hypothet, that would be more consistent with his knowing what had occurred was wrong, there could be some type of punishment.
"Q ... . Is it more consistent with him knowing what he was doing at the time of those facts?
"A Solely based on what you described to me, yes.
"Q And also more consistent with the fact that he knew what the results of his actions were?
"A Asking for an attorney would suggest that, yes."
Not only did the defendant not object to this latest request-for-an-attorney reference, but, indeed, on redirect examination of the doctor, counsel for the defendant included the defendant's request for an attorney as a fact in a hypothetical posed to the doctor:
"Q Doctor, let me read the following hypothet, assume, just assume these facts are true, then I will ask you follow-up questions.
"A person sitting on a bench gets up and begins to stab a man with a knife. The man is unknown to him, said nothing to him. It is in broad daylight, in the middle of the street, and a bright red and orange van is in the middle  is in the street. He sees a gun sticking  he continues to stab the man. He sees a gun sticking out of the van. He moves away from the confrontation, is approached by a person in plain clothes who happens to be an off-duty police officer, pointing a gun at him.
"The person holding the gun tells him to stop, freeze, police. The person stops, looks at the person with the *125 gun, then walks away, walks a distance, sits on the bench. He throws the knife on the bench, then he sits on the bench.
"The person with the gun continues to advise him not to move or, `I'll shoot you, I'll shoot you.' He is observed talking or mumbling. He then looks up and asks, `Why are you pointing a gun at me?' That the person with the gun responds, `Shut up and don't move.'
"Then he says, `Well, I want to see an attorney.' Subsequent to that he tells the police officer, as he's being transported, that God told him to do it. "Doctor, based on those facts, would that be more consistent with a person who is insane at the time?
"A It would be more consistent with a person who was insane at the time. The only fact that is hard to digest, of course, is asking for an attorney in the middle of what appears to be on the basis of your facts, a psychotic episode.
"Q Doctor, is there any way we could know specifically why he asked for an attorney, whether it is to protect him or to sue her? Could we know? Could we find that out?
"A Unless somebody had asked about it at the time, no.
"[Defense Counsel]: No further questions, Judge."
Thus we have before us a classic illustration of waiver. The defendant's request for an attorney and its possible implications were fully explored with three psychiatrists, first by the prosecution without objection by the defendant, and next by defense counsel himself. The defendant surely cannot now be heard to say that his last-minute lone objection to the very type of testimony that he both permitted and elicited throughout the trial preserved this point for review.[3] Accordingly, the judgment and sentence are
Affirmed.
BARKDULL and DANIEL S. PEARSON, JJ., concur.
DANIEL S. PEARSON, Judge, specially concurring.
I believe that the defendant's conviction should be affirmed not only because he waived any error by failing to make timely objection to testimony that he requested an attorney after his arrest, but also because, in this case, it was not error to admit such testimony.
State v. Burwick, 442 So.2d 944, holds that neither the defendant's post-arrest silence nor his request for an attorney can be used to rebut an insanity defense. Burwick's rationale for excluding the defendant's silence is first, that silence is "inherently ambiguous and thus incapable of serving a legitimate probative purpose," id. at 947-48, and second, that basic concepts of fairness embodied in the due process clauses of the Federal and State Constitutions prohibit the use of silence when the defendant was implicitly assured by Miranda warnings that he would not be penalized for exercising his rights, id. at 948. But the rationale for excluding testimony that the defendant requested an attorney is solely that it is considered unfair to use such evidence, not that such evidence lacks probative value. Therefore, the instant *126 case presents a question not presented in Burwick, namely, whether it would violate due process  be unfair  for the State to introduce evidence of the defendant's post-arrest request for an attorney where the defendant himself has introduced evidence of his post-arrest statements and conduct to substantiate his insanity defense. Accord, Greenfield v. Wainwright, 741 F.2d 329, 336 n. 9 (11th Cir.1984), cert. granted, ___ U.S. ___, 105 S.Ct. 2319, 85 L.Ed.2d 838 (1985) (Burwick did not determine whether post-arrest silence may be used to impeach or cross-examine a defense psychiatrist who raised defendant's post-arrest behavior as evidence of defendant's insanity).
In my view, Burwick does not license a defendant claiming insanity to introduce evidence of his post-arrest behavior to substantiate his claim and, at the same time, preclude the State from introducing evidence of other post-arrest behavior probative of the defendant's sanity.
Presumably for the purpose of showing that the defendant's reaction to the killing which had occurred a short time before was not the reaction one would expect of a sane person, defense counsel cross-examined one of the police officers about the defendant's post-arrest conduct at the police station. The entire cross-examination of the officer was as follows:
"Q Officer, you came into contact with the Defendant, was that on the street or at the Police Station?
"A I did come in contact with him at the scene. I observed him inside of a police vehicle there.
"Q And basically you saw him again at the Police Station?
"A That's correct.
"Q At the Police Station he was very quiet and unemotional?
"A Could you repeat that?
"Q Sat there quiet and unemotional?
"A For the most part, yes.
"Q Like he is now?
"A Correct."
Then, after the State had completed its case-in-chief, and at the outset of the defense case, the defendant called Officer Derey, who at the time of the events was a police officer who had responded to the scene of the crime and had assisted in removing the defendant to the police station. Defense counsel's questioning of Derey was brief and pointed:
"Q [By Mr. Williams] Officer Derey, while in your presence did Mr. Allah make any statements to you?
"A He made one statement.
"Q What did he say?
"A That was at the Miami Shores Police Department.
"Q What was that statement?
"A That God told him to kill the man."
Thus it is that the defense affirmatively placed in issue the defendant's conduct and statements at the time of and immediately after his arrest. In so doing, the defendant invited the presentation of any evidence that might tend to show the defendant's sanity, including testimony that the defendant had requested an attorney after his arrest.
Just as the rule of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), which prohibits the prosecution from impeaching a defendant's alibi testimony with his post-arrest silence, may not be used "as a tool to fashion an uncontradicted and distorted version of post-arrest behavior," Grieco v. Hall, 641 F.2d 1029, 1033 (1st Cir.1981), so too the rule of Burwick should not be used by a defendant to choose from the entire spectrum of his post-arrest behavior only those pieces tending to prove insanity. It is hardly unfair to permit the State "to contradict an erroneous self-serving impression" which the defendant, through his questioning of witnesses has created. See Grieco v. Hall, 641 F.2d at 1033; United States v. Mavrick, 601 F.2d 921, 933 (7th Cir.1979). Once the defendant decides to have the issue of his post-arrest behavior considered by the jury, he opens the door, I believe, "to a full not just a selective development *127 of that subject." United States v. Mavrick, 601 F.2d at 933 (quoting United States v. Fairchild, 505 F.2d 1378, 1383 (5th Cir.1975)). See also United States v. Ochoa-Sanchez, 676 F.2d 1283 (9th Cir.), cert. denied, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982); Lofton v. Wainwright, 620 F.2d 74 (5th Cir.1980). I do not believe that Burwick stands for the proposition that the defendant, like some bargain shopper, should be allowed to rummage through his post-arrest conduct, pick out that which is favorable to him, and close the doors on the State by invoking Burwick.
BASKIN, Judge (dissenting).
I dissent from the majority opinion which circumvents the binding authority of State v. Burwick, 442 So.2d 944 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984), by confusing defendant's pre-arrest statement with his post-Miranda request for an attorney.
Defendant stated on two occasions that he wanted an attorney. He first requested an attorney when an off-duty police officer, Dora Slump, interrupted him as he was stabbing an individual he did not know. The officer pointed a gun at defendant and told him not to move or she would shoot him. He responded that he wanted to see his attorney. The second request came after the arresting officer, Officer Sams, took defendant to the police station and informed him of his Miranda rights. Defendant responded that he wanted an attorney.
On appeal, relying on the authority of established case law, defendant contends that the state should not have elicited evidence of his post-Miranda request for an attorney. The majority opinion holds that because defendant permitted psychiatrists to respond without objection to hypothetical questions which included his pre-Miranda request for an attorney, defendant has waived the protection of prohibitions against the disclosure of his post-Miranda request for an attorney. Burwick announces no such waiver.
The fact that defendant requested an attorney when first confronted during the incident is irrelevant; the issue, clearly preserved by a timely objection,[*] is whether defendant's request for an attorney made in response to Miranda warnings may be used by the state as evidence of his sanity. In Burwick the Supreme Court of Florida, at 948, said no:
Silence in the face of accusation is an enigma and should not be determinative of one's mental condition just as it is not determinative of one's guilt. Accordingly, the state should not be permitted to confirm Burwick's mental state with evidence of his post-Miranda silence.
The majority has lost sight of the fact that the post-Miranda request is at issue and not the pre-Miranda request for an attorney. Thus, the first request for an attorney, made prior to the communication of Miranda warnings is unrelated to the post-Miranda exercise of constitutional rights. Accordingly, defense counsel's failure to object to the admission of the pre-Miranda request in no way operates as a waiver of defendant's right to object to the admission of a statement in response to a Miranda warning. The psychiatrists' responses to hypothetical questions pertained to a request by the defendant for an attorney during a confrontation with an off-duty police officer who had neither arrested *128 defendant nor given him his Miranda warnings. Defendant was not required to object to the admission of this statement in order to preserve his timely objection to the testimony of a police officer relating to his subsequent post-Miranda request for an attorney. It is the admissibility of the constitutionally protected post-Miranda request that is prohibited under Burwick. Noting that "[i]t is fundamentally unfair for the state to lure Burwick into remaining silent then impeach the man with this very same silence," Burwick at 948, the Burwick court disapproved of such conduct by the state:
To permit the state to benefit from the fruits of its own deceptions violates the due process clause of the fourteenth amendment and article I, section 9, of the Florida Constitution. See Doyle v. Ohio [426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)]; see also United States v. Hale, 422 U.S. 171, 182, 95 S.Ct. 2133, 2139, 45 L.Ed.2d 99 (White, J., Concurring).
Burwick at 948.
In summary, the improper testimony, condemned by Burwick, was coupled with and preserved by a timely objection. This court is required to apply Burwick regardless of its views on defendant's sanity or the insanity defense.
Because the special concurrence employs the reasoning of the majority opinion, I disagree with its conclusions. The issue is not whether defendant really sought an attorney but whether, by pleading insanity, he relinquishes his right to exclude evidence of his response to Miranda warnings. However, even if defendant is perceived as having waived his right to object to testimony pertaining to his pre-Miranda statement, the absence of a rational connection between the pre-Miranda statement and post-Miranda statement vitiates the majority's conclusion.
For these reasons, I would reverse and remand for a new trial in accordance with Burwick.
NOTES
[1] Clark also held that the defendant had the further obligation to request a mistrial. That part of Clark has since been clarified in Simpson v. State, 418 So.2d 984 (Fla. 1982), which holds that if the objection is overruled, there is no necessity in making the futile gesture of a motion for mistrial.
[2] The only specific objection lodged by the defendant was "to the form of the question as to consistency. If he wants an opinion he can let him state what's consistent. Inconsistent is not the law." R. 207-08; see also R. 146. 175.
[3] The dissent says that defense counsel's failure to object to the admission of the pre-Miranda request for an attorney does not waive the defendant's right to object to the admission of a post-Miranda request for an attorney. However, there is no distinction under Florida law between the pre-Miranda and post-Miranda exercise of a constitutional right. See Lee v. State, 422 So.2d 928, 931 (Fla. 3d DCA 1982), rev. denied, 431 So.2d 989 (Fla. 1983) (holding that "[a]s a matter of state constitutional law, it is impermissible to comment on a defendant's post-arrest silence whether or not that silence is induced by Miranda warnings."); Webb v. State, 347 So.2d 1054, 1056 (Fla. 4th DCA), cert. denied, 354 So.2d 986 (Fla. 1977) ("If one has a right upon arrest not to speak for fear of self-incrimination, then the mere fact the police call his attention to that right does not elevate it to any higher level."). Thus, because the defendant had the right to exclude references to his requests for counsel whenever made, his waiver of that right in any instance waives it in all.
[*] The record reflects the following inquiry and timely objection:

Q. At the Station did you read the Defendant his Miranda Warnings?
A. Yes, I did.
Q. And did he made a response to you?
A. Upon reading them he advised me that he would like to have a lawyer.
MR. WILLIAMS: Objection, Judge.
.....
MR. WILLIAMS: Yes, Judge. I'm objecting to the Prosecutor's question as to how the Defendant responded to the Miranda Rights. He asked for a lawyer. (emphasis supplied)