**Wesley Eugene FIELDS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 15030.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 28, 1987.

Application to Transfer Denied
Nov. 11, 1987.

Nancy A. McKerrow, Columbia, for appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

Wesley Eugene Fields ("appellant") appeals from a judgment denying his motion per Rule 27.26, Missouri Rules of Criminal Procedure (17th ed. 1986), to vacate his conviction of capital murder, § 565.001, RSMo 1978 (now repealed), for which he was sentenced to imprisonment for life, without eligibility for probation or parole until he has served 50 years. The conviction, a result of trial by jury, was affirmed on direct appeal. *State v. Fields*, 668 S.W.2d 257 (Mo.App.1984).

The circuit court, henceforth referred to as "the motion court," conducted an evidentiary hearing on appellant's motion, and afterward filed comprehensive findings of fact and conclusions of law on all issues presented. Rule 27.26(i).

Appellant briefs one assignment of error, averring that the motion court erred in denying relief, in that appellant was denied effective assistance of counsel at his jury trial. Appellant insists his counsel, henceforth referred to as "B ___," was remiss in failing "to object to testimony and argument concerning appellant's post-arrest silence and such failure prejudiced appellant by allowing the State to use his post-arrest silence as evidence of his guilt."

As explained in our opinion affirming the conviction, appellant was found guilty of fatally shooting a man outside a tavern, shortly after a fight between the two. The incident occurred in the presence of several witnesses, and there was no issue at trial about appellant's identity as the individual who fired the shot. Appellant's principal defense was that he was in an intoxicated and drugged condition that prevented him from acting knowingly.

The testimony about which appellant complains came from the police officer who arrested appellant at the scene of the shooting, a short time after it occurred. The officer, on redirect examination by the prosecutor, testified:

"Q. Did you read him his rights, Officer Creasy?

A. Yes, sir, I did.

Q. Did he make any statement to you?

A. He said he wanted to talk to his lawyer before he made a statement."

Just prior to that testimony, the officer, on cross-examination by B ___, had testified:

"Q. You didn't take time to give Wesley Fields any type of sobriety test, did you?

A. No, sir.

Q. I mean you didn't ask him to walk a straight line or anything?

A. No, sir.

Q. Or see if he could?

A. No, sir.

. . . .

Q. Did you take time to examine his eyes?

A. No, sir.

Q. But you say he was, obviously had been drinking, right?

A. Yes, sir.

. . . .

Q. He appeared to be drinking. Then he must of had the smell of alcohol on his breath.

A. Yes, sir.

Q. You did smell his breath.

A. I could smell alcohol.

. . . .

Q. You didn't ask Wesley if he would give a urine sample, did you?

A. No, sir.

Q. You didn't see about giving him a Breathalyzer test or anything, did you?

A. No, sir."

Three segments of the prosecutor's jury argument are germane to movant's claim of ineffective assistance. None of the three was objected to by B ___.

In the opening portion of his argument, the prosecutor said:

"This boy knew what he was doin', perfectly knew what he was doin', and, to prove that to you I want to recall one other thing to your mind; when they arrested him and took him down to jail and asked him if he wanted to make a statement he said no, I wanna talk to my lawyer; you think that's drunk? Uh-uh. He knew what he was doin'."

B ___, in his argument to the jury, said:

"[Officer] Creasy arrested Wesley, said he smelled of alcohol; he didn't give him any sobriety test. The very simple thing to do is ask somebody to try to walk a straight line, one of the things a trooper does if he arrests someone for driving while intoxicated. There are other simple tests like trying, ask a person to try to pick up coins or try to touch your nose with your eyes closed, and those things are really good tests. They had a breathalyzer machine available. Both [Officer] Creasy and I believe Chief Helms testified that Wesley wasn't asked to give a urine sample or blow into a breathalyzer machine.

I think the police have done the best they can, working as hard as they can to get the evidence for a conviction; I just wish they had done a little bit to try to preserve evidence so we could of known for a fact by testing what was the degree of Wesley's intoxication and how drugged was he. The material was available, he could of been given these tests, and we could of had some facts and not just opinions. . . ."

The prosecutor, in the final portion of his argument, said:

"And, when we start talkin' about why tests were not made on him, let me remind you of something. This is the defendant, and, under our laws, he has all the rights that our laws give him and you can't test him unless he lets you, and Mr. (B ___] knows that. Anybody that's even stopped for drunken drivin', they're offered a breathalyzer test but they don't have to take it, they can refuse it. This man was asked if he wanted to make a statement and the first thing he said to 'em, I want a lawyer. All right, that stops the whole business right there, when he says that you can't go a step further and that's it."

Later in the final portion of his argument, the prosecutor said:

"Under this instruction it says an intoxicated or drugged condition will not relieve a person of criminal responsibility unless his intoxication or drugged condition prevented him from acting knowingly. Now, I remind you again that the first thing he said was I want my lawyer."

Appellant, in his brief, states that in order to establish that a conviction must be set aside due to ineffective assistance of counsel, a two-part test must be met. First, says appellant, a prisoner must show that his counsel did not exercise the customary skill and diligence that a reasonably competent attorney would have exercised under the same or similar circumstances. Second, says appellant, a prisoner must show that but for his counsel's errors, there exists a reasonable probability that the result would have been different. As authority for those statements, appellant cites *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Chandler*, 698 S.W.2d 844 (Mo.

banc 1985); and *Seales v. State,* 580 S.W.2d 733 (Mo. banc 1979).

Assuming, without deciding, that appellant has correctly articulated the test established by that trilogy, we shall determine whether, applying such test to the record before us, appellant is entitled to relief.

Appellant, in his brief in his earlier appeal, contended that the trial court committed plain error in permitting the prosecutor to elicit from Officer Creasy the testimony quoted *supra.* In the same brief, appellant contended that the trial court committed plain error in permitting the prosecutor to make the first of the two segments of the final portion of his argument, quoted *supra* (the segment beginning, "And, when we start talkin' ...").

This court found no merit in appellant's position. Our opinion, 668 S.W.2d at 258, concluded that the testimony elicited from Officer Creasy by the prosecutor was in retaliation to the testimony elicited from the officer by B___ on cross-examination, quoted *supra,* and that the prosecutor's argument was retaliatory to B___'s argument wherein he criticized the officers for failing to afford appellant an opportunity to "blow into a breathalyzer machine." We said:

"[The prosecutor's] argument was not made, as [appellant] asserts, to emphasize that he did not testify, but to contend, correctly or not, that the [appellant's] request for a lawyer stopped the arresting officers from giving him a 'breathalyzer test' or any other tests to determine [appellant's] degree of intoxication. We do not see how these comments might have been understood by the jury as evidence of guilt....

The remarks were brief and, even if they were improper, were not likely prejudicial to [appellant's] defense, and certainly were not severe enough to establish manifest injustice or miscarriage of justice creating plain error under Rule 30.20." *Id.*

While we, in appellant's first appeal, were not presented the issue of whether the result of the jury trial would have been different absent the testimony elicited from Officer Creasy by the prosecutor and the retaliatory segment of the prosecutor's argument, we did hold, as illustrated above, that those items, even if improper, were not likely prejudicial to appellant's defense, and certainly did not amount to manifest injustice or miscarriage of justice creating plain error. If such items were that innocuous, they certainly were not egregious enough to give rise to a reasonable probability that the result of appellant's trial would have been different without them.

Appellant, in his brief in the instant appeal, says: "While the second of the excerpts quoted [from the prosecutor's jury argument] may have been in retaliation to [B___'s] argument that no sobriety tests were conducted on appellant after his arrest ..., the first and third clearly were not. [B___] had not argued prior to the prosecutor's first reference to appellant's post-arrest silence so there was no need for retaliation. Both the first and the third excerpts are invitations to the jury to use appellant's post-arrest silence as affirmative proof to refute his defense of diminished capacity."

In support of his contention that the first and third excerpts were improper, appellant cites *Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). There, the accused was arrested for sexual battery some two hours after the incident allegedly occurred. He was forthwith given the *"Miranda* warnings," [1] and responded that he understood them and that he wanted to talk to an attorney before making any statement. The warnings were repeated twice thereafter, and each time the accused's response was the same. Tried by jury in a Florida state court, the accused relied on a plea of not guilty by reason of insanity, and presented psychiatric testimony in support thereof. The prosecution's evidence included testimony by the officers recounting the accused's responses to the *Miranda* warnings. In closing argument, over the accused's objection, the prosecutor argued

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.   1602, 16 L.Ed.2d 694 (1966).

that the accused's repeated refusals to answer questions without first consulting an attorney demonstrated a degree of comprehension inconsistent with his claimed insanity. The jury found the accused guilty, and the judge assessed a sentence of life imprisonment.

As will become apparent *infra,* the odyssey of the case through the judicial system from that point on is, in our view, significant; consequently, we shall trace the journey, noting what occurred at each terminal. By a two-to-one vote, the Second District Court of Appeal of Florida affirmed, holding that the general rule barring prosecutorial comment regarding an accused's insistence on his right to remain silent did not apply, in that the accused's remarks to the officers were "perhaps the most competent evidence on [the accused's] mental capacity at the time of the offense available, being so closely connected to the *res gestae.*" *Greenfield v. State,* 337 So.2d 1021, 1023 (Fla.App. 1976). The Supreme Court of Florida granted certiorari, and remanded the cause to the Court of Appeal for reconsideration in light of an appellate decision in another case handed down after the latter's ruling in the accused's case. On reconsideration, the Court of Appeal adhered to its earlier decision. The accused thereupon filed a petition for writ of habeas corpus in the United States District Court. A federal magistrate agreed with the Florida courts' disposition, and recommended that the petition be denied. The District Court accepted that recommendation. The United States Court of Appeals, Eleventh Circuit, disagreeing with its counterparts in two other circuits, reversed, holding that Florida had to retry the accused within a reasonable time or discharge him. *Greenfield v. Wainwright,* 741 F.2d 329 (11th Cir.1984).

The Supreme Court of United States granted certiorari. At the outset of the principal opinion, Justice Stevens stated that the question presented was whether the prosecution's use of the accused's silence, after receiving the *Miranda* warnings, as evidence of his sanity violated the due process clause of U.S. Const. amend. XIV, as construed in *Doyle v. Ohio,* 426

U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Justice Stevens' opinion, concurred in by six other Justices, reasoned that the *Miranda* warnings contain an implied promise, rooted in the Constitution, that silence will carry no penalty, and that it was fundamentally unfair for the Florida prosecutor to breach the officers' promise to the accused by using his post-arrest, post-*Miranda* warnings silence as evidence of his sanity. *Wainwright,* 474 U.S. at 295, 106 S.Ct. at 641, 88 L.Ed.2d at 632. The Supreme Court affirmed the decision of the Court of Appeals.

Justice Rehnquist, joined by Chief Justice Burger, filed a separate opinion in *Wainwright,* concurring in the result. In that opinion, the two Justices asserted that the accused's conduct and statements after the *Miranda* warnings should not be treated the same as silence. A request for a lawyer, said the Justices, may be highly relevant where the accused pleads insanity, as it tends to show that the accused "is able to understand his rights and is not incoherent or obviously confused or unbalanced." They added, "While plainly not conclusive proof of sanity, the request for a lawyer, like other coherent and responsive statements made near the time of the crime, is certainly relevant." 474 U.S. at 297, 106 S.Ct. at 642, 88 L.Ed.2d at 633–34. The Justices noted that the *Miranda* warnings had told the accused that anything he said could and would be used against him in a court of law, and that nothing in such warnings contained any promise, express or implied, that the words used by the accused in responding to notice of the right to a lawyer would not be used by the prosecution to rebut a claim of insanity. 474 U.S. at 298, 106 S.Ct. at 642, 88 L.Ed.2d at 634. The two Justices did, however, conclude that one comment by the prosecutor in his jury argument constituted a direct reference to the accused's silence at the time of his arrest and, as such, was a breach of the *Miranda* warnings' implied assurance that his silence would not be used against him. On that basis, the two Justices agreed with the

result. 474 U.S. at 301, 106 S.Ct. at 643–44, 88 L.Ed.2d at 635–36.

Appellant insists that the facts in the instant case "bring it directly in line with the holding of *Wainwright.*" Thus, says appellant, the prosecutor's argument (inferably the first and third excerpts) was "a clear violation of [appellant's] constitutional rights," and B___'s "failure to object clearly constitutes ineffective assistance of counsel." Pursuing the point, appellant proclaims: "The law on the admissibility of evidence concerning a defendant's post-arrest silence is basic and well established. The knowledge of this principle and the actions to be taken in accordance with that knowledge ought to be within the expected standard of any attorney defending persons accused of crime."

We agree with appellant that the holding in *Wainwright* should *now* "be within the expected standard of any attorney defending persons accused of crime." However, appellant ignores the fact that *Wainwright* was decided January 14, 1986, some two years and seven months *after* appellant's trial.[2]

The prosecutor, in the first and third excerpts of his jury argument, did *not* argue that appellant's *silence* was indicative of guilt; instead, he argued that appellant's understanding of the *Miranda* warnings, as manifested by what appellant *said,* demonstrated that appellant was not so intoxicated or drugged that he was incapable of acting knowingly.

Assuming, arguendo, that the holding in *Wainwright*—where the defense was insanity—would apply in a case where the defense is diminished capacity as a result of ingestion of intoxicants or drugs, it is clear that the impropriety of such an argument had not been judicially established when appellant was tried. Indeed, as we have seen, the Second District Court of Appeal of Florida had held otherwise, as had the United States Court of Appeals in two separate circuits. Even in *Wainwright,* two Justices of the Supreme Court of the United States held that such an argument was permissible. Their logic, in our estimation, has more to commend it than the rationale of the principal opinion, even though, of course, we recognize that the latter is binding on us.

■ If anything is well established in Missouri jurisprudence, it is the principle that the performance of an accused's counsel in a criminal case is to be measured against the state of the law at the time of counsel's performance, and that ineffectiveness of counsel cannot be predicated on failure to predict a change in the law. *Hanson v. State,* 684 S.W.2d 337, 342[9] (Mo.App.1984); *Pollard v. State,* 627 S.W.2d 114, 116 (Mo.App.1982); *Larrabee v. State,* 616 S.W.2d 542, 543 (Mo.App. 1981); *Bolder v. State,* 613 S.W.2d 196, 197[2] (Mo.App. 1981); *Benson v. State,* 611 S.W.2d 538, 544–45 (Mo.App. 1980).

■ Applying the above rule to the record before us, we hold as a matter of law that B___ was not ineffective in failing to object to the first and third excerpts of the prosecutor's jury argument, as it was not until *Wainwright* that such an argument was authoritatively declared improper. Furthermore, given the posture of the law at the time of appellant's trial, we cannot assume an objection by B___ to the first and third excerpts would have been sustained, as the propriety of such an argument had not yet been adjudicated.

We need not concern ourselves with B___'s failure to object to the second excerpt or to Officer Creasy's testimony on redirect examination, as we have earlier concluded that those items were retaliatory and, in addition, were sufficiently benign that there is no reasonable probability that the result of appellant's trial would have been different in their absence.

■ What we have said is sufficient to dispose of the instant appeal. However, even if B___ could be found derelict in failing to object to the first and third excerpts of the prosecutor's argument, appellant would still be ineligible for relief, as we are unpersuaded that there is a reasonable probability that the result of appel-

---

**2.** Appellant was tried June 27–28, 1983.

lant's trial would have been different had objections been made and sustained.

The State presented uncontradicted evidence at appellant's trial that appellant, prior to the shooting, approached a table in the tavern where the victim, the victim's wife, and a companion were seated. Appellant picked up a pack of cigarettes lying on the table, whereupon the victim told appellant to ask for a cigarette if he wanted one. At that point, appellant began cursing, and was told by the tavern owner to stay away from the victim's table. Sometime later, the victim, his wife, and their companion went outside and entered the victim's automobile. Appellant approached the door on the victim's side and "grabbed" the victim, who immediately jumped out, pushed appellant against the vehicle, and, according to some witnesses, began hitting appellant. An acquaintance of appellant's appeared with a pistol, and told the victim and his companion to get in their car and leave. The victim released appellant and reentered his car. The individual with the pistol took appellant to the former's car and prepared to put the pistol away. Appellant asked for the pistol, simultaneously seized it, then returned to the victim's automobile, thrust the pistol inside the driver's window, and shot the victim.

The verdict-directing instruction on capital murder told the jury that in order to find appellant guilty of that offense, the jury had to find, among other things, that appellant (a) intended to take the victim's life, (b) knew he was practically certain to cause the victim's death, (c) considered taking the life of the victim and reflected upon the matter coolly and fully before doing so, and (d) did not lack the capacity to act knowingly by reason of an intoxicated or drugged condition. The jury, by its verdict, found those issues in favor of the State and against appellant, and the evidence capsulized above was abundantly sufficient to support the verdict. In view of that evidence, we hold that there is no reasonable probability that the outcome of appellant's trial would have been different had B___ successfully objected to the first and third excerpts of the prosecutor's jury argument.

The judgment of the motion court is affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.