David Wayne GREENFIELD, etc.,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, etc., et al.,
Respondents-Appellees.

No. 83–3111.

United States Court of Appeals,
Eleventh Circuit.

Sept. 6, 1984.

James D. Whittemore, Tampa, Fla., for petitioner-appellant.

Ann G. Paschall, Asst. Atty. Gen., Tampa, Fla., for respondents-appellees.

Before GODBOLD, Chief Judge, TJOFLAT and HENDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

David Wayne Greenfield was convicted after a jury trial in Florida state court of sexual battery committed with force likely to cause serious personal injury. He was sentenced to life imprisonment. In this habeas corpus action, he raises one issue, whether the prosecutor's argument to the jury that Greenfield's post-arrest silence showed him to be sane violated his fifth and fourteenth amendments right to a fair trial. The district court denied relief; we reverse.

## I.

On June 21, 1975, petitioner was walking on a path through the woods to Lido Beach, near Sarasota, Florida. He passed a young woman coming from the beach, who smiled and said something to him about the weather. After he passed her, he turned and choked her from behind, dragged her into the woods and forced her to engage in oral sex. Afterwards he made several inconsistent statements, among them: "I don't know why I did this. I know why I did this." He smoked a cigarette that belonged to the woman and then found her car keys for her.

After Greenfield released her, the woman drove directly to the police station and made a report, describing petitioner's attire and saying that his legs were badly sunburned. An officer returned to the beach two hours after the assault and found petitioner walking on the beach. He told petitioner he was investigating a crime that had occurred on the beach and asked petitioner to raise his pants legs. Upon seeing that petitioner's legs were burned, he placed petitioner under arrest. Petitioner voluntarily walked to the police car and, after being advised of his *Miranda* rights, stated that he wanted to speak to an attorney. Otherwise he was silent. Later that day, when another officer again advised petitioner of his rights and asked him if he wished to talk, petitioner only stated that he wanted to speak with an attorney. After speaking with a public defender, petitioner once again declined to talk with the police.

Petitioner was charged with sexual battery, Fla.Stat.Ann. § 794.011(3) (1975), and pled not guilty. He later changed his plea to not guilty by reason of insanity. He went to trial on October 15, 1975. In petitioner's opening statement to the jury, his attorney indicated that he would put the prosecution to its proof of the events and, as a defense, would produce evidence of his client's insanity.

In its case-in-chief, the prosecution called the victim, the investigating police officers, and the doctor who examined the victim shortly after the assault. Two of the officers testified that petitioner had requested a lawyer after being advised of

his *Miranda* rights, but had otherwise remained silent. The defense made no objection to this testimony.[1] At the close of the state's case petitioner moved for a judgment of acquittal. The court denied the motion.

The defense called two psychiatrists, Drs. Lose and Piotrowski, both of whom testified that petitioner had demonstrated classic symptoms of paranoid schizophrenia during their interviews with him. Each doctor stated that in his opinion petitioner was not able to distinguish right from wrong at the time of the alleged crime.[2] Dr. Lose mentioned that he had prescribed thorazine, a drug that diminishes the symptoms of schizophrenia, for petitioner while he was in jail awaiting trial. Schizophrenics can tolerate the drug in substantial amounts; normal individuals given such dosages become extremely drowsy. Petitioner responded positively to the treatment.

In rebuttal, the state called a psychiatrist who testified that in his opinion petitioner was not a paranoid schizophrenic and was able to distinguish right from wrong at the time he committed the offense. The psychiatrist based this opinion on his examination of petitioner, conducted while petitioner was under the influence of thorazine. He testified, however, that thorazine would have made petitioner's symptoms worse rather than better. After the rebuttal, petitioner renewed his motion for a judgment of acquittal, which was denied.

In his summation to the jury, the prosecutor presented, over petitioner's objection, the following argument:

Let's go on to Officer Pilifant who took the stand, who the psychiatrists, both defense psychiatrists, never even heard about, never even talked to. He states that he saw this fellow [petitioner] on the beach and that he went up to him, talked to him, and then arrested him for the offense. The fellow voluntarily put his arms behind his back and said he would go to the car. This is supposedly an insane person under the throws [sic] of an acute condition of schizophrenic paranoia at the time. He goes to the car and the officer reads him his Mranda [sic] rights. Does he say he doesn't understand them? Does he say "What's going on?" No. He says "I understand my rights. I do not want to speak to you. I want to speak to an attorney." Again an occasion of a person who knows what's going on around his surroundings, and knows the consequences of his act. Even down—as going down the car as you recollect Officer Pilifant said he explained what Miranda rights meant and the guy said—and Mr. Greenfield [the petitioner] said "I appreciate that, thanks a lot for telling me that." And here we are to believe that this person didn't know what he was doing at the time of the act, and then even down at the station, according to Detective Jolley—He's down there. He says, "have you been read your Miranda rights?" "Yes, I have." "Do you want to talk?" "No." "Do you want to talk to an attorney?" "Yes." And after he talked to the attorney again he will not speak. Again another physical overt indication by the defendant .... So here again we must take this in consideration as to his guilt or innocence, in regards to sanity or insanity.

The jury found the petitioner guilty as charged, and the judge sentenced him to life imprisonment. Petitioner moved the court for a new trial or judgment of acquit-

1. Under these circumstances the petitioner's failure to object to the introduction of this evidence did not preclude his right to seek appellate review of the evidence's admissibility because he later made several objections to the prosecutor's attempt to argue the evidence to the jury. This can be inferred from the Florida District Court of Appeal's willingness to address the merits of the admissibility issue during its review of the prosecutor's closing argument to the jury. *See Greenfield v. State,* 337 So.2d 1021, 1022–23 (Fla.Dist.Ct.App.1976).

2. In its charge to the jury at the end of the trial, the court instructed the jury to find the defendant legally insane if he was "by reason of mental infirmity unable to understand the nature of his act or its consequences or was incapable of distinguishing that which is right from that which is wrong."

tal notwithstanding the verdict, citing the prosecutor's comment on petitioner's post-arrest silence. The court denied the motion.

Petitioner appealed his conviction to the Florida Second District Court of Appeal, contending in part that the trial court erred in denying his motion for a new trial based upon the prosecutor's use of petitioner's post-*Miranda* warning silence. The court affirmed the conviction. *Greenfield v. State*, 337 So.2d 1021 (Fla.Dist.Ct.App. 1976). The Florida Supreme Court granted certiorari and remanded the case to the district court of appeal for further proceedings consistent with its decision in *Clark v. State*, 363 So.2d 331 (Fla.1978).[3] The district court of appeal reaffirmed its original opinion. Petitioner then filed this petition for a writ of habeas corpus in the federal district court.

After hearing evidence regarding whether *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), barred consideration of the post-arrest silence issue, the magistrate recommended to the district court that the issue not be considered barred by *Wainwright v. Sykes*, since the state appellate court had reached the merits of petitioner's claim, but that it be dismissed on the merits. Petitioner timely filed objections to the recommendation. The district court adopted the magistrate's recommendations and denied the petition.[4] This appeal followed.

## II.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court held that the prosecutor's use of the defendant's post-arrest, post-*Miranda* warning silence, not as evidence of guilt,[5] but solely to impeach the credibility of the defendant's alibi testimony violated the due process clause of the fourteenth amendment. The Court gave two reasons for its holding. First, a defendant's silence has low probative value because it is "insolubly ambiguous." 426 U.S. at 617, 96 S.Ct. at 2244. The ambiguity arises because *Miranda*

> require[d] that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights.

*Id.* Second, the *Miranda* warnings should not be read to impose a hidden penalty on one who chooses to rely on them.

> [W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation [of the crime] subsequently offered at trial.

*Id.* at 618, 96 S.Ct. at 2245 (footnote omitted). These two concerns [6] provide the

---

**3.** In *Clark v. State*, 363 So.2d 331 (1978), the Florida Supreme Court held that improper comment on the defendant's exercise of his right to remain silent is "constitutional error," but not "fundamental error." Accordingly, a contemporaneous objection at trial to the introduction of *or* comment upon such evidence is required to preserve the issue for appeal.

**4.** The district court made no findings of fact; rather, it determined from the record of his state trial proceedings that petitioner's claim was insufficient as a matter of law. Accordingly, we examine the record of the state trial proceedings, as did the district court, to deter-

mine whether petitioner was denied the constitutional right now in issue.

**5.** Even the dissenters in *Doyle* agreed that the evidence was inadmissible to show guilt; in their opinion it could only be used to attack the defendant's credibility.

**6.** The problem of the extent to which a person can be compelled to incriminate himself testimonially without fifth amendment protection, *see Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (fifth amendment does not protect defendant against compelled "self-incrimination" by seized blood sample), is related. Petitioner's silence here should

framework within which we must judge petitioner's claim.

The Supreme Court has placed some gloss on the right articulated in *Doyle*. In *Doyle* itself the Court noted that testimony that a defendant had remained silent would be admissible to rebut the defendant's story that he had spoken with police after his arrest. In *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the Court held that the admissibility of pre-arrest, pre-*Miranda* warning silence to impeach the defendant's testimony in a state court proceeding is a state evidentiary law question; admission of the evidence would not violate the U.S. Constitution because the implicit assurance of the *Miranda* warning was not present. In *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Court similarly held that the admissibility of post-arrest but pre-*Miranda* warning statements to impeach the defendant's testimony did not violate the fourteenth amendment but was rather a state evidentiary decision. The Court has not discussed the issue we now face: the admissibility of a defendant's post-*Miranda* warning silence when offered not to impeach, but, rather, as substantive evidence to rebut his defense of insanity at the time the offense. In evaluating this claim, we first examine the extent to which the two factors relied upon by the *Doyle* court are present in this case.

### A.

■ We first examine the probative value of the evidence. The State argues here that petitioner's silence and request for a lawyer was highly probative of his sanity. We are not convinced.

Insanity is a broad term covering a variety of mental and emotional diseases or defects that prevent the criminal from formulating the requisite punishable intent when he commits a criminal act. The level of lucidity under which an insane person operates may vary with time. Symptoms of insanity also vary widely, with the specific disease and with time, ranging from complete withdrawal (which is often marked by silence) to violent rages. A person's apparent level of comprehension may not always correspond to his level of sanity at the time. Accordingly, the probative value of a person's post-arrest, post-*Miranda* warning silence in determining his sanity at the time of the crime will vary markedly with the disease he has, the symptoms he tends to exhibit, and the closeness in time between the arrest and warning and the crime.

Here two psychiatrists considered petitioner to be a paranoid schizophrenic. At trial, psychiatric testimony suggested that such a person is often quiet. Paranoid schizophrenics, the doctors noted, are often capable of spawning complex, rational plans of action, although they operate under delusions. For example, the State's psychiatrist noted that a paranoid schizophrenic might dream up an elaborate, coherent plan to murder his neighbor, based on the delusion that the neighbor was a KGB agent trying to assassinate him. For petitioner to have consistently asked for a lawyer and refused to speak with police, then, might only reflect his paranoia that the authorities were persecuting him even though he was innocent.

As the Supreme Court of Florida noted in finding post-arrest, post-*Miranda* warning silence not probative of insanity:

[T]hese ambiguities attendant to post-*Miranda* silence do not suddenly disappear when an arrestee's mental condition is brought into issue ... [o]ne could reasonably conclude that custodial interrogation

not be analyzed as behavior showing physical evidence of sanity. Unlike the physical evidence in Schmerber (blood), silence is inextricably tied to the testimonial option which the fifth amendment protects, that is, the option not to incriminate oneself testimonially. Silence may not technically be "testimonial" or "communicative"; however, neither is it physical evidence.

It occupies a unique place in that it shows a mental decision not to be testimonial or communicative. If such "conduct" is not protected, no fifth amendment protection would exist. There would be no alternative to self-incrimination. One would simply choose whether to incriminate himself by inference from silence, or by verbal means.

might intimidate a mentally unstable person into silence. Likewise, an emotionally disturbed person could be reasonably thought to rely on ... a *Miranda* warning.

*State v. Burwick,* 442 So.2d 944, 948 (Fla. 1983), *cert. denied,* — U.S. —, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984). In this case, the evidence was probative only of petitioner's ability to understand English[7] and to remain calm, which would be consistent with the mental disease of paranoid schizophrenia. The evidence accordingly was not probative of petitioner's sanity.

### B.

We next turn to the concern expressed by the Supreme Court in *Doyle* that the defendant not be penalized for exercising his right to silence in view of the implicit assurance the *Miranda* rights give that, if the arrestee chooses not to speak, his silence will not be used against him. This concern was reiterated in *Fletcher,* 455 U.S. at 607, 102 S.Ct. at 1312, where the Court stated that "the sort of affirmative assurance embodied in the *Miranda* warnings" gives rise to a due process violation when post-warning silence is used by the prosecutor.

We first note that nothing in the *Miranda* "assurances" given to petitioner limited them to the instance where guilt, rather than insanity, would be the trial issue. In this respect petitioner's situation was identical to that of Doyle. Petitioner's silence was used against him at trial after he asserted his right to silence. He received no prior indication that he could be so penalized for maintaining silence; indeed, in the *Miranda* warnings he was implicitly assured that he would not be so penalized.

Further, petitioner's silence was not admissible under the well-established exception noted in *Doyle,* that otherwise inadmissible evidence may come in where the defendant takes the stand and perjures himself regarding such evidence, 426 U.S. at 619, n. 11, 96 S.Ct. at 2245, n. 11; for petitioner never testified that he did not remain silent. Petitioner's assertion of insanity, through psychiatric testimony, made no reference to his conduct at the time of the arrest, did not constitute perjury, and therefore did not open the door to the prosecutor's use of post-*Miranda* silence as permitted by *Doyle.*

### C.

Having examined both factors emphasized by the *Doyle* Court in the context of the facts before us, we discuss how they should be synthesized. The Seventh and Tenth Circuits, in analyzing similar situations, have decided that the *Doyle* decision is inapposite in the context of an insanity defense. The Seventh Circuit has so held explicitly, *Sulie v. Duckworth,* 689 F.2d 128 (7th Cir.1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983); the Tenth Circuit, in *United States v. Trujillo,* 578 F.2d 285 (10th Cir.1978), *cert. denied,* 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978), has implicitly agreed.[8]

In *Trujillo,* a government agent testified that he read Trujillo his *Miranda* rights, Trujillo requested a lawyer, the agent continued to question Trujillo, and Trujillo told the agent his name, social security number, education, and parents' addresses. The government apparently never argued at tri-

---

**7.** Had petitioner's particular disorder been that he considered himself to be the literary Don Juan and understood only Spanish when he was in a delusional period, the probative value of his response to the officer's English warnings would have been much higher.

**8.** It is interesting to note that the two cases *Trujillo* relied on for its conclusion that post-*Miranda* silence or requests for a lawyer are admissible to show sanity do not directly support that conclusion. One, *United States v. Julian,* 450 F.2d 575 (10th Cir.1971), specifically states that admission of post-arrest silence to show mental competence would have "a completely false premise in fact or law." *Id.* at 579. The court permitted evidence of the defendant's conduct at the time of his arrest only when the defense psychiatrist testified that the defendant "was trying to be arrested," because the defendant's conduct tended strongly to show that he was not trying to be arrested. In the second case, *United States v. Coleman,* 501 F.2d 342 (10th Cir.1974), the defendant never challenged the admission of his post-arrest silence and request for a lawyer. Both of these cases were decided prior to *Doyle.*

al that Trujillo's responses should be considered evidence of his sanity. The court of appeals determined, however, that the evidence was properly admitted because it was pertinent to the insanity claim, noting that in these circumstances, including that "the government did not exploit post-arrest silence," "the danger of unfair prejudice [was] minimal and the probative value substantial." *Id.* at 288.

The *Sulie* court employed a more lengthy analysis. There, the prosecutor called an officer to testify that the petitioner, after receiving the *Miranda* caution, requested a lawyer. The evidence was used to show that the petitioner was sane at the time he committed the crime. The court of appeals used a two-prong test in approving the evidence. First, it decided without examining the particular circumstances of that defendant's illness that the probative value, to show petitioner's sanity, of the evidence that petitioner requested a lawyer was "great." 689 F.2d at 131. Second, it examined "how much the exercise of the right to remain silent would be deterred if a suspect knew that a request for a lawyer could be used as evidence of his sanity." *Id.* at 130. The court concluded that, since few defendants raise an insanity defense and fewer still are planning their defenses when they are arrested, the suspect's knowledge that his request for a lawyer could be used against him to show his sanity would have only a slight inhibiting effect on the exercise of the right to counsel. Noting that the prosecution needed all the evidence of sanity it could get, the court found the testimony to have been properly admitted.

We disagree with the conclusion of both appellate courts that evidence of a post-*Miranda* warning silence or counsel request is generally highly probative of sanity at the time of the offense. We also disagree with the appropriateness, after *Doyle*, of the *Sulie* court's second inquiry.

The *Sulie* court analyzed the probative value of the request as follows: "Where evidence that the defendant asked for a lawyer is used to prove ... guilt, its probative value is slight (it is not true that only a guilty person would want to have a lawyer

present when he was being questioned by the police); but here it was great." 689 F.2d at 131. The flaw in this logic—as the record in this case shows—is that it is not necessarily true that only a sane person wants a lawyer present when he is being questioned by the police. An excessively paranoid individual, in particular, may want any protection from the police that he can get. As we have previously stated, probative value of the conduct to show sanity in part depends on the nature of the alleged insanity, and, in most circumstances, we cannot conceive that the probative value as to sanity would be significantly greater than the probative value as to guilt or as to credibility in asserting an alibi defense.

The second point analyzed in *Sulie*, what impact use of post-*Miranda* conduct to show sanity may have on criminal suspects in general, sidesteps the point made in *Doyle*. The *particular* suspect, having been implicitly assured that his silence will not be used against him at all and quite likely relying on that assurance, is penalized at trial for exercising his right to remain silent when his silence is used against him as evidence of his sanity. It might well be that, if suspects were told that their post-*Miranda* warning silences could be used to show their sanity, most suspects would pursue the same course of action. However, until and unless we correctly set out for the particular suspect how his right is limited, we penalize him for exercising his right to silence by an after-the-fact assertion of a limitation on the right. We agree with Judge Cudahy's dissent in *Sulie* that the appropriate inquiry in this type case is not whether defendants generally will be inhibited from exercising their fifth amendment rights, but rather whether the particular defendant has been penalized for exercising such rights and whether he has been harmed by the penalty. This is consistent with the position taken by the Supreme Court in *Doyle*, where the Court focused on whether Doyle himself had been harmed, not on the broad inhibitory effects on the right to remain silent. Similarly, in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Court held that a

prosecutor could not comment on a defendant's failure to testify at trial because it imposed a penalty on his exercise of his fifth amendment privilege not to incriminate himself. 380 U.S. at 619, 85 S.Ct. at 1232. The Court did not look at the inhibitory effect of prosecutorial comment on defendants exercising the right generally. The Third Circuit described the proper inquiry to be "whether the particular *defendant* has been *harmed* by the state's use of the fact that he engaged in constitutionally protected conduct, not whether, for the particular defendant or for persons generally, the state's reference to such activity has or will *burden* the exercise of the constitutional *right*." *United States ex rel. Macon v. Yeager*, 476 F.2d 613, 616 (3rd Cir.), *cert. denied*, 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973) (emphasis in original).

In this case, we feel that adherence to the *Doyle* analysis is appropriate and that it requires us to send petitioner back to the state courts for retrial. Petitioner exercised his rights to remain silent and to request counsel. He did so in circumstances having no more probative value as to sanity than the circumstances in *Doyle* had as to guilt; in both situations the silence was "insolubly ambiguous." Petitioner exercised his rights to silence and to counsel after receiving the same implicit assurance Doyle received that his silence would not be used against him.

Moreover, as we have pointed out, unlike in *Doyle*, petitioner did not take the stand. Any use of his silence was as substantive evidence against him, a use that even the *Doyle* dissenters would have decried. This case can not fall under the exception of a defendant using the fifth amendment as a shield for perjury because the defendant never took the stand. His experts likewise did not place his conduct at the time of his arrest directly in issue in the opinions they expressed.[9]

■ We now turn to the question of whether the prosecutor's argument consti-

tuted harmless error. We must find a constitutional error harmless beyond a reasonable doubt before we can affirm the district court's denial of the writ. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The prosecutor relied strongly on the petitioner's conduct as evidence of sanity; his closing argument was not lengthy and the portion challenged here was not minor. We cannot say that the error was harmless beyond a reasonable doubt.

The judgment of the district court is reversed. On remand, the district court shall issue the writ, calling for the state to retry the petitioner within a reasonable time (to be determined by the district court) or to discharge him.

REVERSED, with instructions.

---

**9.** We do not determine, here, if or when such silence might appropriately be used to impeach on cross-examination a defense psychiatrist who raised the defendant's behavior with police at the time of or after his arrest and *Miranda* warning as evidence of insanity. We note only that this issue is not presented in this case.