**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bobbie Ray FRAZIER, Defendant–Appellant.**

No. 90–3821.

United States Court of Appeals, Eleventh Circuit.

Oct. 16, 1991.

---

Claude H. Tison, Jr., MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendant-appellant.

James L. Powers, Julia M. Hyman, Asst. U.S. Attys., Tampa, Fla., for plaintiff-appellee.

Before JOHNSON and EDMONDSON, Circuit Judges, and DYER, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Bobbie Ray Frazier appeals her conviction on two counts of making false statements before a grand jury. We affirm.

## BACKGROUND

Frazier had since 1981 been a clerical employee of Royal Buick, Inc. (Royal Buick), which was one of the largest automobile dealerships in the Tampa, Florida area. During 1985 and 1986, Royal Buick commenced a massive scheme to defraud a federally insured bank. Briefly stated, sales personnel, through a series of ploys, would induce credit-poor customers to purchase used cars by offering substantial rebates, which were in fact the difference between the normal selling price and a purchase price inflated by the amount of the rebate. The sales personnel would later falsify credit applications to make these credit-poor customers appear creditworthy. Customer "rebates" would then be paid out of the loan proceeds.

A criminal investigation into this scheme began in 1987 and resulted in two indictments; eight salesmen were indicted in December 1988, and twenty-two salesmen and managers were indicted in January 1990. In December 1990, the investigation continued, with Ralph Ghioto, the owner of Royal Buick, being one of the targets of the investigation.

The government, as part of the investigation, subpoenaed Frazier to appear before a federal grand jury in October and November 1989. Government investigators had

been informed by David Wilkerson, a former Royal Buick employee, that Frazier told him she knew about the fraud and that Ghioto may have known about the fraud as well. Wilkerson testified at trial that Frazier told him, "Mr. Ghioto had said that if she valued her job, she should keep her mouth shut and not ask any more questions" about the fraudulent scheme. Jack Christie, another former employee, told the government that Frazier had told him about a conversation she had concerning the fraudulent scheme. Christie testified that, although he could not remember her exact words, Frazier told him that she had spoken with Ghioto about the fraud, but that Ghioto had "cut her off."

The government brought charges based upon five responses to grand jury inquiries in which Frazier denied ever having had conversations with Christie and Wilkerson. A two-count indictment was returned, charging Frazier with violating 18 U.S.C. § 1623(a) by making false declarations in her October and November appearances before the grand jury.

During her initial grand jury appearance in October, Frazier had no attorney; but at her November appearance she retained Howard O'Leary of the Dykema Gossett law firm. Royal Buick paid Dykema Gossett's legal fees. Dykema Gossett also represented Royal Buick and Ghioto in civil matters and in certain portions of the grand jury investigation. The government moved to disqualify O'Leary at trial based on an alleged conflict of interest between Dykema Gossett's representation of Royal Buick and Ghioto and its representation of Frazier. Defense counsel claimed, however, that Royal Buick and Ghioto were exclusively represented in the criminal matter by a different law firm. Based on this information and Frazier's written waiver after receiving a detailed conflict letter, the trial judge denied the government's motion to disqualify.

The issue of Frazier's legal representation came up again during the trial. The prosecutor first used Royal Buick's payment of Frazier's legal expenses to help establish Frazier's motive for making false statements. Later, both Frazier's attorney and the prosecutor used Frazier's legal representation in their closing arguments, during which the prosecutor argued on rebuttal that Frazier's attorney was present at her second grand jury appearance because of cooperation among Frazier, Ghioto and O'Leary.

Frazier's theory of defense was that her medical and emotional condition (including a radical mastectomy, transient ischemic attacks, and the death of three close family members) had impaired her to the point that she had no memory of the contested conversations. She did not directly deny at trial that the conversations occurred or that her answers to the grand jury were objectively false. She claimed only that her failed memory made it impossible for her to have the knowledge required to be found guilty.

After a two-day trial, Frazier was found guilty on both counts. Because of her poor financial condition, no fine was imposed; but she was sentenced to thirteen months in prison. This appeal followed.

## DISCUSSION

After reviewing the many issues Frazier raises on appeal, we conclude that none warrants reversal of her conviction.[1] We address, however, Frazier's allegations of prosecutorial misconduct to explain the prohibition on reference to defense counsel set out in *United States v. McDonald*, 620 F.2d 559 (5th Cir.1980).

Frazier claims on appeal that she was deprived of her constitutional rights to

---

1. We find meritless Frazier's arguments that she was denied a fair trial by the following means: a grand juror's testimony that called her testimony before the grand jury "evasive"; alleged prosecutorial vouching for evidence; the district court's failure to rule on a motion to exclude evidence until after defense counsel's opening argument; the district court's refusal to use requested jury instructions; and the prosecutor's allegedly improper references to Frazier's theory of defense. We also find meritless Frazier's arguments that, because her misstatements to the grand jury were immaterial and because of the insufficiency of the evidence, the district court erred in failing to grant a judgment of acquittal.

counsel and to a fair trial. She contends that the government prosecutors' attempts at trial to inquire about her legal representation were directed toward suggesting "that [she] was probably guilty because she accepted representation provided by her employer, and also that her attorney was acting unethically or illegally by serving as a conduit between Royal Buick and the grand jury and was controlling or shaping Mrs. Frazier's testimony to aid Royal Buick and Ralph Ghioto." Brief of Appellant at 33. We disagree, even if we were to accept that the "prosecutor's remark [during rebuttal argument] falls somewhat short of the high level of evenhandedness expected of those responsible for prosecutions in United States courts." *United States v. Mack*, 643 F.2d 1119, 1124 (5th Cir. Unit A April 1981).[2]

Because Frazier's attorney failed to object to the prosecutors' allegedly improper comments during opening and closing arguments, thereby possibly precluding appellate review, we must determine whether the prosecutors' comments amounted to "plain error" under Rule 52(b) of the Federal Rules of Criminal Procedure. Before doing so, though, we will discuss Frazier's contention on appeal that the district court erred in allowing prosecutors to establish motive to lie by eliciting testimony on who paid her legal fees. We will then discuss the plain-error question.

*Motive Evidence*

■ Frazier contends that the district court erred in allowing the prosecutor to use Royal Buick's payment of her legal fees as a means of establishing motive.[3] We disagree. In examining the district court's admission of motive evidence, we are guided by the abuse-of-discretion standard. *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir.1989). We stated in *Elkins* that we view evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial effect." *Id.* Viewed in this light, the information about who paid Frazier's legal expenses was properly admitted into evidence. Although salary and medical insurance showed strong motives for why Frazier might have lied, that Royal

---

**2.** This court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc).

**3.** Because the treatment of Frazier's legal representation figures prominently in our analysis, we will quote at some length from the trial transcript. The payment of Frazier's legal fees was raised during the prosecutor's cross-examination of Frazier:

Q: Mrs. Frazier, you were subpoenaed to appear before the Grand Jury October 24th 1989, correct?
A: Yes.
Q: And you, in fact, did appear without having talked to an attorney; is that correct?
A: Yes.
Q: And sometime between October 24th, 1989 and November 28th, 1989 you were, in fact, subpoenaed again to appear before the Grand Jury; is that correct?
A: Yes.
Q: And you, in fact, were offered a lawyer by Royal Buick to be paid for by Royal Buick to represent you during your appearance November 28th, 1989, correct?
A: Yes.
Q: And the gentleman who represented you during that appearance is Mr. Buck O'Leary who is sitting right over here; is that correct?

A: That's right.
Q: And he was, in fact, at that time being paid by Royal Buick by Mr. Ghioto for your representation, correct?
A: Yes.
Q: How was it, Mrs. Frazier, that you came to obtain Mr. O'Leary to represent you at the November 28th appearance before the Grand Jury?
A: After I went to the first hearing, it frightened me so bad that I talked to my family about it and they said that before I went back to another one that I should see an attorney. And everyone that was subpoenaed to go that day was giving—was told that they could go see Dykema Gossett.
Q: Dykema Gossett's the name of the law firm; is that correct?
A: Yes.
Q: And were you told at that time that Mr. Ghioto was personally represented by that law firm?
A: No, I did not know that he was personally represented.
    Mr. O'Leary: I object, Your Honor. We don't represent Mr. Ghioto personally.
R.6 at 61–63. The prosecutor later impeached this portion of Frazier's testimony by showing her an affidavit signed by her indicating that she thought Ghioto was represented by Dykema Gossett in some aspects of the criminal investigation.

Buick paid her legal expenses was properly placed before the jury to further prove the strength of her connection to Ghioto and Royal Buick.

We reject Frazier's argument that, because she would likely have been entitled to court-appointed counsel, the prosecutors should have been prevented from using Royal Buick's payment of her legal fees at trial because it was not probative of motive. That Frazier would have received court-appointed counsel does not remove the probative value of the evidence that Royal Buick paid for her legal expenses. The jury could reasonably infer from this evidence that Frazier had a motive to lie.

■ We also reject Frazier's reliance on *United States v. McDonald*, 620 F.2d 559 (5th Cir.1980). Frazier contends that *McDonald* stands for, among other things, the proposition that a defendant's exercise of her right to counsel may not be used as evidence of motive without infringing on her constitutional rights. *McDonald*, however, stands for nothing like that. It does not hold that defense lawyers are immunized from being spoken about during criminal trials. The Fifth Circuit in *McDonald* held only that a prosecutor—to attempt to cause the jury to infer that the defendant is guilty—cannot present evidence of the simple fact that defendant retained a lawyer before the defendant's arrest. *Id.* at 564. Here, the prosecutor was not attempting to cause the jury to infer that Frazier was guilty just because she hired an attorney. The significance of the presence of counsel was more focused and pertinent. The prosecutor was stating directly that, because Frazier was completely dependent on Royal Buick for all her financial, medical and legal needs, she had a substantial motive for lying to the grand

jury to protect her benefactor. Nothing in *McDonald* disallows the use of such motive evidence. We conclude that Frazier's constitutional rights were not violated by the admission of motive evidence about who paid her legal fees.

*Prosecutor's Opening Statement and Closing Arguments*

■ Even if we determined that the prosecutor's remarks might have been some kind of error, we would have to determine them to be "plain error" before we could act upon them because defense counsel failed to raise timely objections. *See* Fed.R.Crim.P. 52(b). The Supreme Court has instructed us that plain errors are "those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings[.]'" *United States v. Young*, 470 U.S. 1, 14, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (citations omitted). The plain-error doctrine, however, "is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *Id.* (citations omitted). As the Court has stated on more than one occasion:

> [C]ounsel for the defendant cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that [the prosecutor's] comments to the jury were improper and prejudicial.

*Id.* at 14 n. 13, 105 S.Ct. at 1046 n. 13 (citing *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940)). After reviewing the entire record, we conclude that the prosecutor's comments failed to rise to the level of plain error.

Frazier contends that the prosecutors first used her legal representation to infer guilt in opening statements.[4] A reading of

---

4. During the prosecutor's opening statement, he said:

> We expect to prove that when Mrs. Frazier testified the first time in the Grand Jury, she was not represented by an attorney.... The second time we expect the evidence to show that she was represented by an attorney, which is her right, obviously, when she appeared in November. We expect to prove those attorneys were also attorneys for Royal

Buick, which, of course, is the target of this investigations, and its owner, Mr. Ghioto.

> We expect to prove to you that the defendant, Mrs. Frazier made the false declarations that she did for the purposes related to the ongoing investigation into the activities of Royal Buick and her employer, Mr. Ghioto in [an] effort to frustrate, to impede the Grand Jury from learning about whether or not her employer was knowingly involved in the un-

the prosecutor's opening statement reveals that the prosecutor did, as Frazier contends he did, say that Frazier "followed her marching orders in the Grand Jury." In context, however, the "marching orders" were *not* a directive from her lawyers, but were Ghioto's alleged threat to fire Frazier if she spoke about the fraud. But, even if the "marching orders" remark did relate to Frazier's lawyers, we see no plain error for the reasons we discuss next.

Frazier's chief contention, though, is that the prosecutor's allegedly improper comments about her legal representation "reached a crescendo" during the prosecutor's closing rebuttal argument.[5] To analyze the prosecutor's remark properly for plain error, we must evaluate it against the entire record, *Young,* 470 U.S. at 14, 105 S.Ct. at 1046, and, especially here, "in light of the defense argument that preceded it." *Darden v. Wainwright,* 477 U.S. 168, 179, 106 S.Ct. 2464, 2470, 91 L.Ed.2d 144 (1986). Frazier's attorney tried to persuade the jury to believe that the grand jury proceedings were totally secret and that neither Ghioto, O'Leary nor anybody else could probably find out about Frazier's grand jury testimony. *See supra* note 5. This argument invited the prosecutor's rebutting argument that Frazier, who is not bound to keep the grand jury proceedings secret, could tell anybody what happened. The question arises, though, whether the

---

derlying fraudulent activity. We expect to prove that at his urging she was told, don't talk about things like that if you value your job. We expect to prove that she followed her marching orders in the Grand Jury, and knowingly made false statements for that very purpose, and we expect that the motive for her to make the false statements that she did is a significant factor in this case, one that you'll need to consider.

R.3 at 18–19.

5. Frazier's legal representation came up *after* the prosecutor's initial closing argument, at which time Frazier's attorney made these statements in his closing argument:

Grand Jury proceedings are secret, not even the witness's lawyer is permitted to be in the Grand Jury room with the witness. So, when Mrs. Frazier is in the Grand Jury room on October 24, she's perfectly free to tell the Grand Jury whatever she wants about Ralph Ghioto. And neither Ralph Ghioto nor Ralph Ghioto's lawyer nor anybody else is going to know what she says for a long time to come, if ever.

Now, that raises another significant question because when Mrs. Frazier appears before the Grand Jury on October 24, 1989, she doesn't even have a lawyer. Now, doesn't that raise some significant questions in your mind right there? I mean, if this conversation with Mr. Ghioto took place where she is told to keep her mouth shut, and if she then had this unforgettable conversation with David Wilkerson where she told him about the conversation with Ghioto and she's in league with Mr. Ghioto to cover up the truth, what on earth is she doing down there in the Grand Jury on October 24 without a lawyer? If he did, I would suggest it could be one of the dumbest things he could ever do.

... I suggest that if Mr. Ghioto and Mrs. Frazier were really in cahoots together, Mrs. Frazier wouldn't be down there on October 24 without a lawyer, she would be down there with an army of lawyers and she wouldn't be answering any questions whatsoever.

R.7 at 101–02. The prosecutor then argued against this defense proposition in his closing rebuttal argument:

Mr. O'Leary mentions that it doesn't make sense that Royal Buick would allow Ms. Frazier to go to the Grand Jury without a lawyer the first time and knowing what she knew about Mr. Ghioto.

Well, to begin with, they are not supposed to see that she has a lawyer at any time. That's her business, not Royal Buick's. *She's a free human being and isn't supposed to be under the thumb of Ghioto and Royal Buick to the extent that they supply her with lawyers so that they can keep track of them.* That isn't supposed to happen. That isn't normal. I point out that it happened in this case, but the evidence that has been introduced in evidence in this trial proves beyond a reasonable doubt that, as Mr. O'Leary said, they didn't know what the Grand Jury wanted to ask the first time. They didn't have any idea. So, there wasn't any real noise. There wasn't any real knowledge for concern on the part of Royal Buick.

The second time there was. They knew what was asked. Mr. O'Leary suggests, well, the Grand Jury is secret. Why, nobody can find out what went on in there. Well, that's not totally true. The Grand Jury secrecy rules don't apply to the witnesses. *Mrs. Frazier can tell anybody what happened and she did. She told her lawyers, and her lawyers told Mr. Ghioto. You can infer that. And the next time she was subpoenaed, Royal Buick's lawyers are there because they know what's coming. They knew what she was asked the first time, and as [the other prosecutor] told you, they knew they were going to be asked about Mr. Christie the second time.*

R.7 at 116–17 (emphasis added).

prosecutor's next statement ("She told her lawyers, and her lawyers told Mr. Ghioto. You can infer that." *See supra* note 5.) constitutes plain error. We conclude that it does not.

The prosecutor was responding to the "defense counsel's opening salvo," *Young*, 470 U.S. at 12, 105 S.Ct. at 1045, by making the jury aware that Frazier could very easily pierce the veil of secrecy surrounding the grand jury. And while the prosecutor's comments about O'Leary passing information to Ghioto *might*—and we stress might [6]—have been inappropriate, they did not "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *Id.* at 16, 105 S.Ct. at 1047.

Even if we had lingering doubts about whether the prosecutor's comments unfairly prejudiced Frazier's case—which we do not—these doubts would be quickly dissolved by the overwhelming evidence against Frazier. The government presented witnesses who testified to conversations they had with Frazier, conversations which she later denied at her grand jury appearance. Given this testimony, Frazier's failure to refute this testimony and, despite Frazier's claims of failed memory, a record on appeal replete with examples of Frazier's relatively good memory, that Frazier made false statements to the grand jury is clear beyond a reasonable doubt.

We reject here, as well, Frazier's argument that *McDonald* prohibits the prosecutor from speaking about her defense counsel. Frazier contends that *McDonald* extended the principle set forth in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (prosecutor may not use defendant's silence at trial to impute guilt), to prohibit prosecutors from talking about defendant's exercise of the right to counsel

of choice. While we think there is something to this analysis, we recognize the Supreme Court has limited the prohibitions placed upon the prosecutor's use of a defendant's silence at trial and we extend that limitation to a prosecutor's reference to defendant's selection of counsel. In *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), the Court refused to read *Griffin* so broadly that "any 'direct' reference by the prosecutor to the failure of the defendant to testify violates the Fifth Amendment as construed in *Griffin*." *Id.* at 31, 108 S.Ct. at 868–69. As in *Darden* and *Young*, the Court viewed the prosecutor's comments in context, *id.* at 33, 108 S.Ct. at 869 (citing *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)), and stated that,

> It is one thing to hold, as we did in *Griffin*, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge ... that the same reasoning would forbid the prosecutor from fairly responding to an argument by the defendant by adverting to that silence.... [W]e decline to expand *Griffin* to preclude a fair response by the prosecutor in situations such as the present one.

*Id.* at 34, 108 S.Ct. at 870.

Here, we similarly refuse to expand *McDonald* to preclude totally references to a defendant's use of counsel. Prosecutors may not use the simple fact of representation by counsel to imply a defendant is guilty; but when the defendant's particular choice of counsel is relevant to an issue (such as, means or motive) in dispute, defense counsel is not exempt from being talked about at trial.[7] This kind of discus-

---

6. Although we need not reach the issue because of defense counsel's lack of contemporaneous objection, we remain unpersuaded that this comment would rise even to the level of error at all. The record does not provide sufficient facts to determine the issue conclusively, but if Dykema Gossett were representing Frazier during the grand jury appearances *in her capacity as one of the Royal Buick's employees*, it may well be that O'Leary could ethically provide information to Ghioto, especially if the lawyer had Frazier's

consent. Under this set of circumstances, the jury could reasonably infer that O'Leary was acting as a conduit between Frazier and Ghioto. We stress that nowhere in the record does the prosecutor say that O'Leary counselled Frazier to lie or that he acted unethically or illegally—if he had, our analysis might change.

7. In this regard, we reject Frazier's reliance on *Greenfield v. Wainwright*, 741 F.2d 329 (11th Cir.1984). In *Greenfield*, a defendant who

sion is especially permissible when the prosecutor is responding to a potentially misleading argument by defense counsel.

Again, the point of the prosecutor's mentioning defense counsel here was not simply that Frazier had a lawyer (which, in itself, might be improper argument), but that the lawyer was a link between Frazier and her employer whom she seemed to have lied to protect. The lawyer as a tie between employer and employee was a fair, relevant and permissible argument.

In this case, we conclude that the prosecutor's comments did not improperly infringe upon Frazier's right to counsel or unfairly prejudice her case. "[I]t is particularly important for appellate courts to relive the whole trial imaginatively.... [E]ach case necessarily turns on its own facts." *Young,* 470 U.S. at 16, 105 S.Ct. at 1047 (citations and internal quotations omitted); *see also Robinson,* 485 U.S. at 35, 36, 108 S.Ct. at 869, 870; *cf. Darden,* 477 U.S. at 179–80, 106 S.Ct. at 2470–71. Here, the prosecutor responded to defense counsel's misleading statement that Ghioto or O'Leary could not have found out about the grand jury proceedings. That the prosecutor's remarks about O'Leary's role as a conduit *might* have been inappropriate, *see supra* note 6, does not elevate them to the level of plain error.

### CONCLUSION

Because we conclude that evidence about who paid for Frazier's legal fees was properly admitted into evidence and that the prosecutor's comments during trial did not violate Frazier's constitutional rights or prejudice her case, the conviction is AFFIRMED.

JOHNSON, Circuit Judge, dissenting:

The majority largely ignores many significant misstatements and improper comments by the prosecutor in his closing statement. Because I find that these improprieties rise to the level of plain error, I dissent.[1]

During the closing, the prosecutor alluded to acts of perjury that were neither charged nor proved. The prosecutor stated without further explanation that Ms. Frazier made more false statements than those charged. *See Brooks v. Kemp,* 762 F.2d 1383, 1403 (11th Cir.1985) (attorney may not hint that he has additional evidence he has not produced), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986). The prosecutor moreover misrepresented to the jury that Ms. Frazier did not tell the grand jury that her medical problems caused her to forget about the conversations. *See U.S. v. Valentine,* 820 F.2d 565, 570 (2d Cir.1987) (reversal required when prosecutor knowingly misrepresented defendant's grand jury testimony).

The prosecutor impermissibly expressed his personal opinion about defendant's guilt by asserting that Ms. Frazier's memory defense was a post hoc coverup for her lies. *See U.S. v. Stefan,* 784 F.2d 1093, 1100 (11th Cir.1986), *cert. denied,* 479 U.S. 855, 107 S.Ct. 193, 93 L.Ed.2d 125 (1986); *see also,* ABA Standards for Criminal Justice, § 3–5.8(b) (1986) ("It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."). Furthermore, he unfairly maligned defendant's counsel by making statements such as "the defense and the presentation you saw was garbage." *See U.S. v. McLain,* 823 F.2d 1457, 1462 (11th Cir.1987).

The prosecutor also grossly exaggerated the weakness of defendant's defense by repeatedly characterizing it as utterly meritless. Although a prosecutor "may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). A prosecutor may even describe a defense as "absurd" and "a big fake" as

---

claimed insanity sought counsel after being arrested. In that case we held only that the defendant seeking counsel was not probative of sanity. *Id.* at 334. *Greenfield* does not stand for the proposition that a prosecutor is prohibited entirely from mentioning defense counsel.

1. I do not address the majority's other ruling since I find this issue dispositive.

long as the trial record supports the prosecutor's comments. *United States v. Caldwell*, 543 F.2d 1333, 1361–62 (D.C.Cir.1974), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976). In this case, however, it is undisputed that Ms. Frazier actually had blockage of her carotid artery, that she suffered a transient ischemic attack,[2] that she took prescription drugs which slowed her responsiveness, and that she suffered memory loss. What was contested was whether these conditions prevented her from remembering two conversations which occurred several years before. The prosecutor's repeated reference to the defense as "garbage," "mush," "absurd," a "smoke screen," and an "excuse for perjury" amounted to a flurry of "foul blows." *Berger v. United States*, 295 U.S. at 88, 55 S.Ct. at 633.

In light of Ms. Frazier's colorable arguments, the prosecutor failed to compile the overwhelming evidence of guilt necessary to render harmless his many improprieties. *See Francis v. Dugger*, 908 F.2d 696, 701 (11th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1696, 114 L.Ed.2d 90 (1991). Moreover, the trial court failed to cure the prosecutor's errors through jury instructions. *See United States v. Lopez*, 898 F.2d 1505, 1511–12 (11th Cir.1990). I therefore find that the prosecutor's improprieties " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). For the foregoing reasons, I would reverse the conviction.

---

2. The attack, similar to a stroke, rendered her temporarily blind and paralyzed.