J-S22022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v.  :
:
:
:
TAJHEA NYREE SHULER  :
:
Appellant  :  No. 1649 MDA 2024

Appeal from the Judgment of Sentence Entered December 19, 2023
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000581-2020

BEFORE:   LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                 **FILED: AUGUST 21, 2025**

Tajhea Nyree Shuler appeals from the judgment of sentence of five to ten years of imprisonment imposed following his multiple assault-related convictions.  We affirm.

On May 17, 2020, Amanda Perillo was working as a store clerk at a Quick-Mart in Williamsport.  Appellant entered the store around 2:30 p.m. with his aunt, browsed, and left without buying anything.  He returned alone approximately four and one-half hours later.  During this second visit, Ms. Perillo approached to ask if Appellant needed assistance.  When he did not respond, Ms. Perillo informed him that the store was closing and that he needed to leave.  Appellant then brandished a steak knife and stabbed Ms.

---

[*] Former Justice specially assigned to the Superior Court.

Perillo in the neck. The victim survived, but she required surgery and has suffered permanent scarring as well as nerve damage in one of her arms as a result of the neck injury.

Another customer in the Quick-Mart at the time of the attack did not witness the stabbing, but heard Ms. Perillo scream and saw Appellant run out of the store and to the right. After the victim exclaimed that Appellant had stabbed her, the witness attempted to chase after Appellant and called 911. Surveillance footage captured the assault and flight.

Steven Grant Bowman, Jr., a Pennsylvania constable, responded to the scene along with state troopers. Once he obtained a description of the suspect from one of the troopers, he followed the path of Appellant's flight toward a nearby apartment complex. He observed a male, later identified as Appellant, exit from the rear of one of the apartments one hour after the incident. Appellant matched the physical description of the suspect but was wearing different clothes. Constable Bowman then called for law enforcement to speak with Appellant, and Trooper Robert Jacobs of the Pennsylvania State Police ("PSP") responded.

Trooper Jacobs noticed that Appellant was "very agitated" when he approached. *See* N.T. Trial, 10/2/23, at 46. The trooper was in full uniform and arrived in a marked car. Appellant referred to himself as "Jesus" and became hostile with Trooper Jacobs, telling him that he "kn[e]w how police [we]re[.]" *Id*. Trooper Jacobs, a drug recognition expert, believed that

Appellant was under the influence of controlled substances. Despite Appellant's erratic behavior, his comments led the trooper to believe that Appellant was aware that he was dealing with a law enforcement officer.

Meanwhile, PSP Trooper Garrett Shnyder responded to the Quick-Mart. He was in contact with Trooper Jacobs, who relayed that they located a potential suspect nearby. As Trooper Shnyder began to walk over to the apartment complex, he stopped just close enough to examine Appellant's physical appearance. He returned to the store to review the surveillance footage of the stabbing and flight, and confirmed that Appellant was the individual in the video. In the recording, Appellant was wearing a black mask, ripped jeans, a green jacket, and gray and white shoes. Troopers Shnyder and Jacobs then conducted a search of the walking path between Appellant's apartment complex and the Quick-Mart and found a bloody steak knife.

Based on the aforementioned events, Appellant was arrested. Trooper Jameson Keeler read Appellant his **Miranda** warnings,[1] and Appellant requested an attorney. The troopers thereafter obtained a search warrant for Appellant's apartment, and Trooper Shnyder assisted in the search. Law enforcement located the black mask and ripped jeans in front of Appellant's washing machine in his kitchen, and the gray and white shoes were found beside the entryway door. The green jacket was never recovered. DNA

_____

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

testing later confirmed the presence of the victim's blood on the steak knife and Appellant's jeans.

Based on the foregoing, Appellant was charged with aggravated assault causing serious bodily injury ("SBI"), aggravated assault with a deadly weapon, simple assault, and recklessly endangering another person ("REAP"). At the ensuing jury trial, the victim, the witness, and investigating troopers testified to the aforementioned facts, and the jury watched the surveillance footage. The parties also stipulated that Ms. Perillo suffered serious bodily injury.

During his opening argument, Appellant's counsel informed the jury that Appellant conceded to stabbing the victim, but claimed that he could not be held criminally responsible because he was legally insane at the time. To support his defense, Appellant presented Scott Scotilla, Ph.D., an expert in clinical psychology. Dr. Scotilla interviewed Appellant five weeks after the stabbing. He also reviewed hospital records, conducted mental exams, measured Appellant's depression and anxiety, and issued the Miller Forensic Assessment of Symptoms test, which analyzed whether he was feigning a psychiatric illness. Dr. Scotilla did not review the police report or the surveillance footage of the incident. Based on his interviews and tests, Dr. Scotilla believed that Appellant had been suffering from delusions and hallucinations, which were ongoing at least seven weeks prior to the stabbing. He also determined that Appellant's psychosis was not substance induced. In

the end, Dr. Scotilla concluded that Appellant was legally insane at the time of the stabbing because his actions were significantly affected by his mental illness.

As a rebuttal witness, the Commonwealth presented John O'Brien, an expert in forensic psychiatry, who is licensed as both a lawyer and physician. He interviewed Appellant two years after the incident and attested that Appellant initially claimed to have not remembered stabbing the victim. However, following some probing, Appellant explained that on that day he "was at home playing video games and then he retrieved a knife from the kitchen and walked over to the store where a lady told him he couldn't be there, and he stated, quote, that's when I stabbed her in the neck and I left." *Id*. at 135. He also told Dr. O'Brien that when he returned to his apartment after the crime, he told his aunt what he had done. From this, Dr. O'Brien concluded that "it's a situation where it was clear to me that he did have recall, so it wasn't a memory problem. It's just that he was selectively reporting." *Id*.

Dr. O'Brien also reviewed the surveillance footage of the incident and the police report. He opined that the actions Appellant took after he stabbed the victim, including fleeing the scene, discarding his knife, confessing to his aunt, changing his clothes, and being uncooperative with police, "demonstrated behaviors that indicated that he was aware of the nature and quality and wrongfulness of his actions." *Id*. at 138. Notably, over counsel's

objection, Dr. O'Brien also stated that Appellant exercised his right to silence and requested an attorney after being read his ***Miranda*** warnings, which Dr. O'Brien believed established Appellant's "intact awareness of law enforcement." ***Id***. at 139. The court issued a cautionary instruction that, while a jury ordinarily may not consider evidence of a defendant's invocation of the right to remain silent and request for counsel as evidence of guilt, the jury could consider Dr. O'Brien's statement for the purpose of determining Appellant's sanity. ***Id***. at 140. The doctor ultimately concluded that Appellant "demonstrated that he was able to understand the nature, quality, and wrongfulness of his actions, and therefore, under the law, is not an individual who is legally insane." ***Id***. at 146.

As a final rebuttal witness, the Commonwealth presented Trooper Keeler, who prepared the charges and read Appellant his ***Miranda*** warnings. Without objection, Trooper Keeler testified that Appellant demanded an attorney in response to being advised of that right. Based on Appellant's request, the court provided the same cautionary instruction that it issued following Dr. O'Brien's testimony. ***Id***. at 172-73.

At the conclusion of trial, the jury convicted Appellant of aggravated assault-causing SBI, simple assault, and REAP. As to the charge of aggravated assault with a deadly weapon, the jury found that Appellant was guilty but mentally ill. The court sentenced Appellant to the above-referenced sentence on the aggravated assault-causing SBI conviction, with a deadly weapon

enhancement. It imposed guilt without further penalty for the aggravated assault with a deadly weapon offense, and found that simple assault and REAP merged with aggravated assault-causing SBI for sentencing purposes.[2]

Appellant failed to timely appeal. After his post-sentence and direct appeal rights were reinstated through a timely petition filed in accordance with the Post Conviction Relief Act, he did not submit a post-sentence motion but appealed to this Court. He and the trial court complied with Pa.R.A.P. 1925, and he now presents the following issues for our review:

> I.   Did the court err in overruling the defense counsel's objection to [Dr. O'Brien] commenting on Appellant's Fifth Amendment right against self-incrimination and the prosecution eliciting such testimony through [Trooper Keeler]?
>
> II.  Whether the inconsistency in the verdict by the empaneled jury renders the criminal verdict invalid.
>
> III. Whether the court erred in sentencing Appellant without an inquiry on whether Appellant was severely mentally disabled and in need of treatment at the time of sentencing pursuant to [42 Pa.C.S.] § 9727.

Appellant's brief at 1-2 (some capitalization altered, some articles omitted).

Beginning with Appellant's first issue, which concerns a constitutional right, we note that our "standard of review is *de novo*, and our scope of review

---

[2] The court did not conduct a colloquy pursuant to 42 Pa.C.S. § 9727, as discussed further *infra*. **See** 42 Pa.C.S. § 9727 (stating that, at the time of sentencing for a guilty but mentally ill conviction, the court must hear testimony and make a finding as to whether the defendant suffered from severe mental disability and is in need of treatment).

is plenary." ***Commonwealth v. Molina***, 104 A.3d 430, 441 (Pa. 2014). The Fifth Amendment protects an individual's privilege against self-incrimination by requiring that a defendant must be informed that he "has the right to remain silent, that anything he says can and will be used against him in court, and that he has the right to consult with counsel and to have counsel present during interrogation, and, if he is indigent, counsel will be appointed for him." ***Commonwealth v. Frein***, 206 A.3d 1049, 1064 (Pa. 2019) (citing ***Miranda***, 384 U.S. 436).

Our High Court has held that "testimonial reference to a defendant's post-arrest silence is constitutionally off-limits[.]" ***Commonwealth v. Rivera***, 296 A.3d 1141, 1157 (Pa. 2023). This includes reference to "post-***Miranda*** silence as affirmative proof of sanity when attempting to rebut an insanity defense." ***Commonwealth v. Hunsberger***, 565 A.2d 152, 154 (Pa. 1989) (citing ***Wainwright v. Greenfield***, 474 U.S. 284 (1986)). Additionally, a defendant's post-***Miranda*** request for counsel may not be referenced as evidence of guilt. ***See Commonwealth v. Reed***, 42 A.3d 314, 321-22 (Pa.Super. 2012).

However, "improper references to post-arrest silence are subject to harmless error analysis in the direct appeal context, where an objection to the reference has been preserved." ***Commonwealth v. Adams***, 39 A.3d 310, 321-22 (Pa.Super. 2012) (cleaned up). The following law guides harmless error review:

> [A]n error will be deemed harmless where the appellate court is convinced beyond a reasonable doubt that the error could not have contributed to the verdict. Guidelines for determining whether an error is harmless include: (1) whether the error was prejudicial to the defendant or if prejudicial, whether the prejudice was *de minimis*; (2) whether the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) whether the evidence of guilt was so overwhelming as established by properly admitted and uncontradicted evidence that the prejudicial effect of the error was so insignificant by comparison to the verdict.

*Id*. at 322 (cleaned up).

Initially, we observe that Appellant has waived his argument relating to Trooper Keeler's statement concerning his post-arrest request for an attorney. Appellant did not object to this testimony at trial, and only requested the same cautionary instruction that the court had previously given following Appellant's objection to Dr. O'Brien's statement.[3] *See Commonwealth v. Spone*, 305 A.3d 602, 612 (Pa.Super. 2023) ("[A] party must make a timely and specific objection at trial in order to preserve an issue for appellate review. [*See*] Pa.R.A.P. 302(a)[.]" (cleaned up)). *See also Commonwealth v. Berrios*, 297 A.3d 798, 805 (Pa.Super. 2023) (stating that "issues, even those of

---

[3] Although the trial court's instruction was patently incorrect where it directed the jury to consider the statements of Dr. O'Brien and Trooper Keeler regarding Appellant's silence as evidence to determine legal insanity, Appellant did not object to the court's instruction, and, in fact, specifically requested it. *See Commonwealth v. Gilliam*, 249 A.3d 257, 275 (Pa.Super. 2021) (stating that an appellant "may not challenge the adequacy of the trial court's cautionary instruction where defense counsel agreed to it and never objected").

constitutional dimension, are waived if not raised in the trial court" (cleaned up)). Moreover, Appellant omitted this claim of error from his Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Therefore, this issue is waived.

Regarding Dr. O'Brien's testimony, Appellant takes issue with the statement that Appellant's refusal to speak with police and request for a lawyer were indicative of his sanity where the law specifically forbids such references. *See* Appellant's brief at 23-24. Without further explanation, Appellant claims that Dr. O'Brien's averment should "not [be] deemed as harmless error." *Id*. at 27.

Preliminarily, we agree with Appellant that it was impermissible for Dr. O'Brien to reference Appellant's post-*Miranda* silence and request for an attorney to prove that he was sane at the time he committed the offense. *See Hunsberger*, 565 A.2d at 154. However, this does not end our inquiry. Under the harmless error doctrine, if the error was *de minimis*, cumulative, or insignificant, it does not warrant reversal. *See Adams*, 39 A.3d at 321-22.

Considering the other properly introduced, uncontradicted evidence establishing Appellant's guilt and sanity, we conclude that any prejudice from Dr. O'Brien's statement was insignificant and could not have contributed to the verdict. The evidence of Appellant's guilt is clearly overwhelming where

he admitted to stabbing Ms. Perillo and stipulated that he caused her serious bodily injury. *See* N.T. Trial, 10/2/23, at 20.

Moreover, the evidence of his sanity was conclusively supported by ample uncontested facts. Appellant fled the scene of the stabbing immediately, discarded the weapon, confessed to his aunt, and changed his clothes, which Dr. O'Brien believed established that Appellant was not insane. *See* N.T. Trial, 10/2/23, at 138. *See also Commonwealth v. Yasipour*, 957 A.2d 734, 740 (Pa.Super. 2008) (indicating evidence that a defendant "took steps to prepare his home in anticipation of the arrival of police and concocted a story to hide the events that transpired" demonstrated sanity); *Commonwealth v. Mitchell*, 839 A.2d 202, 280-81 (Pa. 2003) (concluding that reference to an appellant's post-arrest silence "could not have contributed to the verdict" where uncontradicted evidence established that the appellant was at the scene of the crime and fled for ten days). Trooper Jacobs further attested that Appellant became confrontational with him and his statements indicated that he was conscious that he was speaking to someone of authority. *See* N.T. Trial, 10/2/23, at 46. Therefore, we conclude that Dr. O'Brien's isolated reference to Appellant's silence and request for an attorney was harmless in light of the overwhelming evidence establishing Appellant's guilt and sanity.

Next, Appellant challenges the jury's inconsistent verdicts. Specifically, Appellant highlights that the jury found him guilty of aggravated assault-

- 11 -

causing SBI, yet contrarily adjudicated him guilty but mentally ill of aggravated assault with a deadly weapon, despite both arising from the same facts. *See* Appellant's brief at 27-30. This Court has held that "inconsistent verdicts are permissible in this Commonwealth." *Commonwealth v. Banks*, 253 A.3d 768, 775 (Pa.Super. 2021) (cleaned up). Further, "[s]uch verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal." *Commonwealth v. McNeal*, 120 A.3d 313, 328 (Pa.Super. 2015). So long as there is sufficient evidence to support the jury's verdicts, "this Court will not disturb guilty verdicts on the basis of apparent inconsistencies[.]" *Commonwealth v. Burton*, 234 A.3d 824, 829 (Pa.Super. 2020) (cleaned up).

> A person is guilty of aggravated assault if he:
>
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
>
> . . . .
>
> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S. § 2702.

Appellant did not contest at trial that he stabbed the victim, only that he was not culpable because he was legally insane at the time. With respect to the legal insanity defense, our Crimes Code provides that "[t]he mental soundness of an actor engaged in conduct charged to constitute an offense

shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense." 18 Pa.C.S. § 315. Thus, the burden is on the defendant to prove insanity, and a jury may presume that a defendant is sane "for purposes of determining their criminal liability." *Commonwealth v. Fortune*, 302 A.3d 780, 783 (Pa.Super. 2023).

Further, the law states that:

A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

18 Pa.C.S. § 314(a). A person who is mentally ill is "[o]ne who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." *Id*.

Appellant claims that because his crimes, which were based upon the same facts, "were committed at the exact same moment in time[,]" he asserts it is impossible to be mentally ill as to one offense but not the other. *See* Appellant's brief at 30. He does not contest that sufficient evidence supported the jury's verdicts, only that "a finding by the jury that Appellant was guilty but mentally ill to one [a]ggravated [a]ssault charge but not the other is inconsistent and should be grounds for a new trial." *Id*. at 29 (some articles

omitted). He cites **Commonwealth v. Trill**, 543 A.2d 1106 (Pa.Super. 1988), to support his argument. **Id**. at 27-29.

In **Trill**, this Court reiterated the well-settled notion that inconsistent verdicts are valid if sufficient facts support each conviction. **Id**. at 1111. Based upon two different incidents, a jury found Trill guilty of theft by receiving stolen property and guilty but mentally ill of theft. Trill argued that "[s]ince the offenses in both informations occurred on the same day, . . . he should have been found guilty but mentally ill on the theft charge also." **Id**. In rejecting that argument, this Court stated that the "Commonwealth's evidence surrounding the theft by receiving stolen property charge was completely dissimilar from the evidence involved in the charges stemming from" the other incident of theft. **Id**. Since the evidence supported the jury's convictions, and it was "free to believe all, some, or none of the evidence proffered at trial[,]" this Court was unwilling to disturb its conflicting convictions. **Id**. (cleaned up).

Contrary to Appellant's contention, **Trill** did not hold that inconsistent verdicts must be supported by dissimilar sets of evidence. Rather, our law states that so long as there is sufficient evidence to support each of the inconsistent verdicts, they will not be disturbed. **See**, **e.g.**, **Burton**, 234 A.3d at 829. Here, the jury was not required to conclude that Appellant was guilty but mentally ill as to the aggravated assault-causing SBI offense merely because it determined that Appellant was guilty but mentally ill as to the

deadly weapon offense. **See Commonwealth v. Thomas**, 65 A.3d 939, 944-45 (Pa.Super. 2013) ("[T]he rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment." (cleaned up)). Although the verdicts are founded upon the same set of facts, because there was sufficient evidence to support the jury's determinations, we have no cause to disturb the inconsistent verdicts. **See Trill**, 543 A.2d at 1111.

Appellant's last argument challenges the court's failure to conduct a colloquy regarding his mental state at the time of sentencing pursuant to 42 Pa.C.S. § 9727(a). This issue presents a legal question. **See Commonwealth v. Hernandez**, 328 A.3d 1159, 1165 (Pa.Super. 2024) ("Legality of sentence issues occur . . . when the sentence imposed is patently inconsistent with the sentencing parameters set forth by the General Assembly." (cleaned up)). Thus, our standard of review is "*de novo*, and our scope of review is plenary." **Id**.

> The relevant statute provides as follows:
>
> A defendant found guilty but mentally ill or whose plea of guilty but mentally ill is accepted under the provisions of 18 Pa.C.S. § 314 (relating to guilty but mentally ill) may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense. Before imposing sentence, the court **shall** hear testimony and make a finding on the issue of whether the defendant at the time of sentencing is severely mentally disabled and in need of treatment pursuant to the provisions of the act of July 9, 1976 (P.L. 817, No. 143), known as the Mental Health Procedures Act.

42 Pa.C.S. § 9727(a) (emphasis added, footnote omitted).

As to Appellant's aggravated assault with a deadly weapon conviction, for which he was deemed guilty but mentally ill, the court acknowledged the jury's findings and correspondingly imposed no further penalty. *See* Sentencing Order, 12/19/23. Therefore, there was no cause for the court to conduct a colloquy pursuant to § 9727(a). Contrarily, the court sentenced Appellant on the most severe crime of aggravated assault-causing SBI, a conviction that did not implicate § 9727(a). *Id*.

Based on the foregoing, we conclude that Appellant has not demonstrated that the violation of his Fifth Amendment right was reversible error, that the verdicts should be overturned based on inconsistency, or that the court was required to conduct a colloquy pursuant to § 9727(a). Accordingly, Appellant is not entitled to relief, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/21/20025